## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| PHILIPS NORTH AMERICA LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2:21-cv-00298 |
| v. | ) | |
| | ) | JURY TRIAL DEMAND |
| RADON MEDICAL IMAGING | ) | |
| CORPORATION-WV; and RADON | ) | |
| MEDICAL, LLC | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

Plaintiff Philips North America LLC ("Philips" or "Plaintiff"), by and through its undersigned counsel, hereby brings the following Complaint against Radon Medical Imaging Corporation-WV and Radon Medical, LLC (collectively "Radon" or "Defendants"), and pleads as follows:

## NATURE OF THE ACTION

1.  Philips develops, sells, supports, maintains, and services medical imaging systems, such as computed tomography (CT) systems, x-ray systems, nuclear medicine systems, PET scanners, magnetic resonance (MR) scanners, and ultrasound machines used at hospitals and medical centers, including the proprietary hardware, software, and documentation for such systems.

2.  Philips' proprietary software enables certain functions on Philips medical imaging systems and enables Philips to control, update, and track the use of its ultrasound system software in the marketplace. Philips' customers pay for enabled features and additional options. These features and options enable software functionality and selectively enable interoperability with a

variety of related Philips hardware devices.  Philips also has generated extensive proprietary information, documentation, and software for servicing the Philips systems.

3.      Philips' access controls protect Philips copyright-protected software and documentation as part of Philips' system of managing the terms and conditions upon which Philips software may be accessed.

4.      Radon Medical Imaging Corporation-WV and Radon Medical, LLC are medical device equipment sale and servicing companies that sell Philips' medical imaging devices.  Radon Medical Imaging Corporation-WV and Radon Medical, LLC also operate under the Radon Medical Imaging name.

5.      Defendants have received and used Philips' proprietary materials relating to Philips medical imaging systems by fraudulently and without authorization accessing Philips' proprietary computers and computer networks without authorization.

6.      Defendants have fraudulently created, obtained, and/or used counterfeit, intentionally modified, or otherwise unauthorized Philips access control certificates, authorized versions or copies of which are only made available by Philips to Philips' developers and engineers and licensed customers.  These fraudulent, counterfeit, modified, or otherwise false access control certificates have been used by Radon's employees to gain unlicensed access to Philips' copyright protected software, which contains Philips' trade secrets, on Philips medical imaging machines, by hacking Philips' access controls on Philips medical imaging machines.

7.      Furthermore, in a fraudulent and intentional scheme, Defendants, without Philips' consent hacked into Philips' proprietary software to modify, tamper with and/or alter Philips' ultrasound systems to enable software features in order to access options and add-on features that they are not licensed to use and have not paid for.  Defendants accomplish this scheme by

circumventing Philips' access controls. Defendants engage in such conduct to further their repair, sale, and service contract business.

8.     Based on Defendants' conduct and the resulting damages suffered by Plaintiff, Plaintiff asserts claims in this Complaint for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; West Virginia Computer Crime and Abuse Act ("CCAA"), W. Va. Code § 61-3C-16m *et seq.*; the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201 and 1202; the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; the West Virginia Uniform Trade Secrets Act ("UTSA"), W. Va. Code § 47-22-9 *et seq.*; unfair competition; and fraud.

9.     Philips brings this action against Defendants to recover damages caused by these activities.

10.     Philips additionally seeks a permanent injunction, among other things, preventing Defendants, their employees and affiliates, from further accessing Philips' systems and from further disclosing and/or using Philips' confidential and trade secret information.

## PARTIES

11.     Plaintiff Philips North America LLC is a Delaware LLC, formerly known and doing business as Philips North America Corporation (a Delaware Corporation), with a principal place of business in Andover, Massachusetts.

12.     Plaintiff is in the business, *inter alia*, of developing, manufacturing, selling, supporting, maintaining, and servicing Philips medical imaging systems, including the proprietary hardware and software and related trade secrets used to operate, service, and repair such systems.

13.     Radon Medical Imaging Corporation-WV is a medical imaging device distributor and service provider corporation organized and existing under the laws of the State of South Carolina with a principal place of business in Charleston, West Virginia.

14. Radon Medical, LLC in is a medical imaging device distributor and service provider corporation organized and existing under the laws of the State of Virginia with a principal place of business in Moneta, Virginia.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), because asserted claims arise under 18 U.S.C. § 1030(a), 17 U.S.C. §§ 1201 and 1202, and 18 U.S.C. § 1836, and 28 U.S.C. §1369 (supplemental jurisdiction) and the doctrines of ancillary and pendent jurisdiction.

16. This Court has personal jurisdiction over Radon Medical Imaging Corporation-WV, because it is registered in West Virginia and has a principal place of business in West Virginia.

17. This Court has personal jurisdiction over Radon Medical, LLC, because it is registered in West Virginia.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and/or a substantial part of the conduct, events, or omissions giving rise to Philips' claims occurred in this judicial district and/or had or have connections to this judicial district.

## PHILIPS' MEDICAL IMAGING SYSTEMS AND PROPRIETARY INFORMATION

19. Philips develops, manufactures, sells, and subsequently supports, maintains, and services medical imaging systems, including developing, manufacturing, selling, supporting, maintaining, and servicing the proprietary hardware and software used to operate, service, and repair such systems. The systems include, but are not limited to, imaging devices such as CT and

PET scanners, x-ray machines, ultrasound machines, MR scanners, and nuclear medicine scanners (individually or collectively, the "Philips systems").

20.     The Philips systems are complex pieces of medical equipment that include accompanying proprietary software developed and owned by Philips.  Because the proprietary software enabled on the Philips systems allows them to function, the proprietary software includes strict access controls to limit access to software features.  These access controls also control access to optional software, which can enable additional system features, which Philips licenses to end users for a fee.

21.     By way of an example, Philips has sold and sells ultrasound systems driven by one of two copyright-protected software platforms.  Each of these platforms was created by, and is owned by, Philips and includes Philips' confidential and proprietary information, intellectual property, and trade secrets.

22.     Each ultrasound system includes both model-specific features and machine-specific features that Philips enables pursuant to the license that the end user purchases.  An ultrasound system may also support optional hardware add-ons and features, like ultrasound transducers, which Philips can enable if the end user purchases an additional license.  These specific software and hardware features may only be used when a particular feature is licensed by the end user for a fee, and enabled for the specific ultrasound system.  And only the specific authorized users of the machine can access the enabled features and software options.

23.     For each Philips ultrasound system sold by Philips, only the licensed features and tools purchased for that specific system are enabled, and only the specific authorized users of the machine can access the enabled features and software options.  Features and add-ons that have not been licensed are not accessible on the ultrasound system or by the authorized user—any attempt

to use an unlicensed feature on an ultrasound system will result in an error message that the feature is not compatible with the system, and the machine-specific access controls will prevent access to the unlicensed feature. If a specific hardware add-on requires that a software feature be enabled to make use of such hardware, absent the required software, Philips' ultrasound systems will report an incompatible device and the related software will be disabled.

24.     For example, if a user attaches an ultrasound transducer to a Philips ultrasound system, but the related software is not enabled for that ultrasound system, the imaging functionality will be disabled and the user will receive an error message informing the user that the transducer is incompatible with that specific ultrasound system.

25.     In addition, to support and maintain its medical imaging systems, Philips has developed extensive proprietary information, documentation, and software for servicing its medical imaging systems. Philips refers to these service tools and service documentation as its Customer Service Intellectual Property ("CSIP").

26.     Philips' proprietary service software and documentation are created and owned by Philips. Philips also has registered copyrights for its software for its medical imaging systems.

27.     Philips has reserved and retained its rights to Philips' confidential and trade secret material contained within the Philips systems.

28.     Philips authorizes individuals to have access to a specific "level" of Philips' CSIP based on the role of the person given access and contractual terms. CSIP Level 0 materials are available to those in the United States who request access to such materials. Philips places greater restrictions on CSIP Level 1 materials and makes them available only to Philips' employees and customers with a valid contract and subject to non-disclosure agreements. Philips reserves CSIP

Level 2 access for certain Philips' employees and specific trade partners under contract, and Level 3 access for only a subset of service specialists within Philips.

29.     Philips has expended substantial efforts to protect the confidentiality and value of its CSIP, and the integrity and functionality of the proprietary software enabled on the Philips systems.  These efforts include implementing and maintaining technologies allowing Philips to efficiently control access to these CSIP materials to individuals who are authorized and need to know such information, while maintaining confidentiality, management and control of the distribution of these materials, and the terms and conditions under which they may be used.  This management and control includes contractual obligations as well as hardware and software controls in digital form, which are conveyed in connection with the protected material.

30.     For example, Philips' employees and authorized customer representatives must execute confidentiality agreements in exchange for advanced training and enhanced access to Philips' servicing information and software tools.  Such agreements acknowledge that the Philips employees and authorized customer representatives who receive access also have the benefit of Philips' substantial investment in Philips' proprietary information.  This investment includes thousands of hours of work by Philips employees in the development of advanced troubleshooting and diagnostic methods and protocols relating to maintenance and repair of Philips' equipment. Philips also provides confidentiality and proprietary notices on such documents and software.

31.     Philips has also developed and implemented robust technological measures to control access to its CSIP materials.

32.     One such technological measure is Philips' Integrated Security Tool ("IST"), which is a digital rights management solution for preventing unauthorized access to Philips' CSIP. Philips' IST application suite provides mechanisms to manage user entitlements through certificate

generation, distribution, and entitlement verification. Philips generates a user-specific IST certificate, which specifies the service tools the user is entitled to access, and delivers the certificate to a client IST application resident on the user's personal computer. A specific user's IST certificate is like a key card that allows only the specific user with appropriate entitlements coded in his or her IST certificate to gain access.

33.     The IST certificate manages access to various Philips' confidential and proprietary CSIP materials. For example, Philips uses its IST solution to restrict access to software and functionalities on the Philips medical imaging systems such as enhanced software tools, advanced servicing, diagnostics, and calibration software, or enabling and disabling licensable features on the Philips systems.

34.     In order to obtain a valid IST certificate, a user must connect to the IST database through Philips software installed on the user's personal computer. The IST database then issues a certificate to the user. Each IST certificate is valid for 30 days and must be renewed, otherwise the IST certificate expires and is no longer recognized as valid by the Philips systems.

35.     The specific software available to an individual, such as a customer or a Philips authorized employee, is dictated by that individual's access credentials, including username and password combinations, Philips-generated key codes, and access control certificates. Service software and functions on the Philips systems are each assigned a CSIP level. Further, each IST certificate is entitled to access a certain CSIP level. A user must present his or her IST certificate to the medical imaging system to enable the system to check which service software and tools the user is authorized to access. The medical imaging system then makes service software and functions available to the user based on the entitlements specified by the IST certificate. Thus, a customer who entered into a service contract with confidentiality and non-disclosure terms may

access certain service tools that are not available to a customer who has not entered into such a service contract.  An authorized Philips Field Service Engineer ("FSE") can access additional service tools.  And an authorized Philips National Support Specialist would be able to access still further tools that would not be made available to a Philips FSE.

36.     Similarly, a user's IST certificate provides a user with entitlements to decrypt authorized Philips' encrypted CSIP materials. Philips encrypts its CSIP Level 1 and Level 2 electronic documents.  A user's IST certificate provides a user with entitlements to decrypt authorized Philips' encrypted CSIP materials but only with respect to specific modalities.  For example, a user with an IST certificate that provides Level 1 access to Philips' CT documents and Level 0 access to Philips' X-Ray documents, would be prevented from decrypting Level 2 CT documents or Level 1 or  Level 2 X-Ray documents, because the user lacks the necessary entitlements.  Similarly, an individual with Level 0 access is not entitled to decrypt Philips' encrypted documents at Level 1 or Level 2, nor to gain access to the Level 1, Level 2 or Level 3 service tools.

37.     Thus, for each of the Philips systems, only the licensed features and tools purchased for that specific system are enabled, and only the specific authorized users of the machine can access the enabled features and software options.

38.     Philips has spent considerable time and money creating this software and developing access controls to limit and control access to these features in the manners described above.

39.     Unauthorized access to or changes to a Philips system or its software puts Philips' proprietary software and trade secret information at serious risk, and harms Philips' ability to control access to its proprietary software and use of Philips systems.

40.     Furthermore, Philips' restricted confidential trade secret CSIP materials and software are not generally known in the industry.  Such confidential materials and trade secrets are extremely valuable to Philips because Philips derives economic value from the information not being made public, and any competitor who unlawfully acquired such information would be able to unfairly compete against Philips.

## DEFENDANTS' UNAUTHORIZED ACTIVITY

41.     Philips recently learned that Defendants hack Philips' access control mechanisms on the Philips systems in order to gain unlicensed and unauthorized access to enable unlicensed optional Philips software on Philips ultrasound systems used or sold by Defendants in their business and to gain unlicensed and unauthorized access to Philips' servicing tools.

42.     During its investigation of third party medical device repair company, 626 Holdings, LLC and its principal, Alexander Kalish, Philips discovered that Alexander Kalish created an IST certificate generator software program to generate fake Philips IST certificates that impersonate Philips employees by setting the company to be "Philips Healthcare" and the application entitlements to be "Philips FSE", *i.e.*, above Level 0 access to Philips' CSIP.  Philips also learned that Kalish and/or 626 Holdings provided information related to accessing Philips' information to Radon's president.  On information and belief, this information included Kalish's key generator and/or one or more fake certificates for use by Radon employees.  626 Holding and Alexander Kalish are defendants in *Philips North America, LLC, et al. v. 626 Holdings, LLC, et al.*, 19-cv-81263-RS (S.D. Fl.).

43.     In addition, upon information and belief, Defendants are creating and/or using fake credentials and/or other hacking tools in order to enable unlicensed optional Philips software on Philips ultrasound systems used and/or sold by Defendants in their business and to gain unlicensed

and unauthorized access to Philips' servicing tools.

44.     Specifically, Philips recently discovered that Defendants sold two ultrasound machines to King's Daughters Medical Center in Ashland, Kentucky.  Upon inspection of these machines, Philips learned that these machines had a multitude of software options, valued over $300,000, that have been enabled without Philips' authorization.  In other words, the software configuration on these machines was modified from the original configuration as sold by Philips.

45.     On information and belief, Defendants used false, modified, or counterfeit IST certificates to hack these Philips systems to illegally enable software options before selling the devices to King's Daughters Medical Center.  On information and belief, Defendants then presumably service these devices using Philips' CSIP—which they obtained through the use of fake credentials that they are not authorized to access and use.

46.     Philips has never authorized Defendants to enable options on its imaging systems, including those machines enabled at King's Daughters Medical Center.  Philips has never authorized Defendants to obtain an IST certificate beyond CSIP Level 0 access.  Nor has Philips authorized Defendants to distribute modified Philips ultrasound systems or make modifications to the software configuration of Philips ultrasound systems.  Indeed, Philips does not authorize any third party to enable options on its ultrasound imaging systems—such enablement can only be done through authorized Philips employees.

47.     Defendants' unauthorized access and modifications of software on a medical device risk a multitude of harms—Defendants could, among other things, load unauthorized software, change system settings, alter dosing levels on X-Ray systems, and compromise virus protection, which could result in system overload and/or malfunction; modification and/or de-activation of the system's anti-virus software, which would leave the system vulnerable to cyber-attacks from

other nefarious actors; tarnishment of Philips' reputation and brand with its customers through system failures and modifications caused by Defendants; and potentially result in real time harm to a patient relying on the medical device

48.     Defendants' hacking of Philips' ultrasound machines puts Philips' proprietary software and trade secret information at risk, and impedes Philips' ability to control the licensing of Philips software features and functionality of its medical imaging devices and access to its Philips' proprietary CSIP.  Defendants' acts cause substantial harm to Philips.

49.     In short, Defendants are profiting at the expense of Philips by offering customers the ability to make unlicensed use of Philips software, by hacking Philips software to enable unlicensed features that customers would otherwise have to purchase separately from Philips.  On information and belief, Defendants then sell modified devices and services in direct competition with Philips, at a discount, and are therefore making these unauthorized changes for commercial gain.

## COUNT I

### *Computer Fraud and Abuse Act, 18 U.S.C. § 1030*

50.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

51.     Defendants have intentionally and/or knowingly accessed the Philips systems to obtain fake credentials that they were not entitled to possess.

52.     Defendants have also intentionally and/or knowingly accessed Philips' confidential and trade secret software and enabled unlicensed software features on the Philips systems at healthcare provider locations using fake credentials that they were not entitled to possess.

53.     Defendants have held Radon out as an authorized holder of Philips' IST certificates

- 12 -

with an authentication level corresponding at least to that of an authorized Philips FSE, when they were not authorized by Philips to make use of a fake IST certificate for any reason.  Specifically, Defendants held Radon out as a Philips FSE by using false, modified, or counterfeit access control certificates to access Philips' systems.

54.    Defendants' fake certificates were made and used specifically for the purpose of removing, bypassing, or circumventing Philips' access controls intended to restrict use of Philips' proprietary information and software, including trade secrets and other confidential information, without authorization.

55.    Defendants' false, modified, or counterfeit access control certificates have no legally valid use; and Defendants' only use thereof is to facilitate access to Philips' proprietary information and software, including trade secrets and other confidential information, without authorization.

56.    Defendants, by and through their conduct, have caused Philips to incur losses in excess of $5,000.00 in value in a one-year period related to the investigation of and cost of responding to Defendants' actions.

57.    Philips' IST service and associated databases are connected to the Internet and affect interstate commerce. Thus, Philips' IST registration service and associated databases are protected computers.

58.    The Philips systems at healthcare provider locations are sold, serviced, maintained, and employed through and in interstate commerce, and/or are typically connected to the Internet, and for all these reasons affect interstate commerce; thus, the Philips systems are also protected computers.

59.    Accordingly, Defendants, by and through their actions, have violated Section

1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer and by obtaining information from such a protected computer, and so causing loss exceeding $5,000 in any one-year period.

60.     On information and belief, Defendants hold themselves out as authorized to perform maintenance and other services and enable unlicensed software features, or otherwise conceal the unlawful nature of their services, and received payment for those services or products, using Philips' proprietary system software and servicing tools.  Such system software and servicing tools were developed at great expense to Philips and their unlawful use provides significant value to Defendants which is greater than $5,000 for a one year period.

61.     Defendants, by and through their actions, have thus violated Section 1030(a)(4), by knowingly, and with the intent to defraud, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and, by means of such conduct, furthered the intended fraud and obtained one or more things of value, including access and use of Philips' proprietary and trade secret CSIP.

## <u>COUNT II</u>

### *West Virginia Computer Crime and Abuse Act, W. Va. Code § 61-3C-1 et seq.*

62.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

63.     Philips' IST service and associated databases, and the Philips systems at healthcare provider locations are "computers" within the meaning of Section 61-3C-3(3).

64.     Defendants have violated Section § 61-3C-4 by knowingly and willfully accessing Philips' software in the Philips systems without permission, as described above, to execute a

scheme or artifice to defraud, or obtain money, property, or services by means of fraudulent pretenses, representations, or promises.

65.     Defendants have violated § 61-3C-5, by knowingly, willfully, and without authorization accessing and/or causing to be accessed Philips' software in the Philips systems, as described above, with the intent to obtain computer services.

66.     Defendants have violated § 61-3C-7(a), by knowingly, willfully, and without authorization accessing and using Philips' software in the Philips systems, and directly or indirectly, tampering with and/or altering or attempting to tamper with and/or altering such Philips' software.

67.     Defendants have violated § 61-3C-13(b), by knowingly and willfully possessing a counterfeit or unauthorized access device for accessing and using Philips' software in the Philips systems.

68.     Defendants have violated § 61-3C-13(c), by knowingly, willfully, and with intent to defraud, possessing a counterfeit or unauthorized access device, or knowingly, willfully and with intent to defraud, using, producing or trafficking in such counterfeit or unauthorized access device for accessing and using Philips' software in the Philips systems.

69.     Philips was injured by reason of Defendants' violations of West Virginia Computer Crime and Abuse Act.

## COUNT III

### *Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 and 1202*

70.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

71.     The Philips systems include Philips' copyright-protected proprietary works.

72.     Philips' proprietary works within the Philips systems are protected by copyright under Title 17.

73.     Philips employs numerous layered technological measures including, but not limited to, machine specific access controls, to control access to and use of its copyrighted proprietary software and/or portions thereof on the Philips devices.

74.     Philips also employed layers of technological measures, including access control certificates, in order to protect Philips' copyright protected works, including software and documentation, by controlling access to and the duration of such access to Philips' protected works.

75.     Defendants have employed false, modified, or counterfeit access control certificates to circumvent a technological measure that controls access to Philips' protected software. Specifically, Defendants' false, modified, or counterfeit access control certificates enable unauthorized users to access the Philips systems thereby circumventing technological measures to gain unauthorized access to the proprietary software.

76.     Defendants' methods of bypassing or circumventing access controls that protect Philips' works and control access to Philips' works also prevent unauthorized access to Philips' copyright-protected log files and options files within the Philips systems.  Upon information and belief, Defendants intentionally circumvented access controls using their exploit tools and fake certificates, and potentially other methods, to gain unauthorized access to and copy Philips' copyrighted log files on the Philips systems.

77.     Thus, Defendants have intentionally and/or knowingly circumvented technological measures that effectively control access to a work or works protected under Title 17, in violation of 17 U.S.C. § 1201(a)(1)(A) of the Digital Millennium Copyright Act.

78.     Philips' proprietary software includes access controls that are accessed and read by Philips' automated copyright license management software within Philips systems, which is a standard component of Philips' proprietary software included in each Philips system.

79.     Philips authorizes specific machines to execute only specific licensed optional software, and the specific software is only available on that specific machine consistent with the hardware and software features the customer purchases for that specific machine.

80.     When a Philips system boots up, a Philips access control allows the system to load only the licensed optional software based on machine-specific configurations accessed by Philips access controls. This automated system allows Philips to exclude unlicensed use of optional software and thus automatically enforces the terms and conditions under which Philips makes its software available on a Philips ultrasound system.

81.     Philips' machine-specific configuration files for controlling access only to licensed optional software include copyright management information under 17 U.S.C. § 1202(c), including the terms and conditions of the use of the software residing thereon in machine readable configuration files.

82.     Defendants' modifications to such copyright management information using fake certificates is intended to allow users to make unauthorized access to unlicensed portions of Philips' protected software.

83.     Defendants, by enabling unlicensed options in Philips systems, knowingly and with the intent to induce, enable, facilitate, or conceal infringement by their customers provide, and have provided, falsified copyright management information and/or distributing falsified copyright management information in violation of 17 U.S.C. § 1202(a).

84.     Defendants' intentional alteration of Philips' copyright management information

- 17 -

and subsequent distribution of modified configuration files for accessing unlicensed portions of Philips' proprietary software is done with the knowledge that such behavior induces, enables, facilitates, or conceals infringement of Philips' copyright in its proprietary software in violation of 17 U.S.C. § 1202(b).

85.    Defendants' unauthorized means of accessing the Philips systems, including Philips' proprietary software and copyrighted logs, and Philips' encrypted documentation and software has, and does, entail the unauthorized access, copying, and potential alteration of the contents of Philips' copyrighted proprietary software, log files, options files, and electronic documentation.

86.    Philips has been and will continue to be damaged in an amount not presently known with certainty, but that will be proven at trial.

87.    Philips is entitled to the range of relief provided by 17 U.S.C. § 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, punitive damages, and Philips' costs and attorneys' fees in amounts to be proven at trial.  Defendants' conduct also has caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

## COUNT IV

### Defend Trade Secrets Act, 18 U.S.C. § 1836

88.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

89.    Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business,

and economic information, as alleged above and below, in Philips' proprietary software for the Philips systems, and Philips service and diagnostic software.

90.     Philips' confidential, proprietary, and trade secret information relates to products used in, or intended for use in, interstate or foreign commerce.

91.     Philips' proprietary software, documentation, and access control systems contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.  These measures include, for example, implementing systems of access registration, access control measures, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

92.     Philips has expended significant money and effort in developing Philips' proprietary software and access control systems, and the information would be difficult to properly acquire or duplicate by Defendants or other competitors of Philips.

93.     Philips' proprietary software and access control systems derive independent economic value to Philips by not being generally known because, among other reasons, they allow Philips to secure the Philips systems and grow its relationships with its customers; nor are Philips' trade secrets readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.

94.     Upon information and belief, Defendants misappropriated some or all of these trade secrets by improper means for their own use and/or benefit without express or implied consent by Philips.  At the time of their use of such trade secrets, Defendants knew or had reason to know that their knowledge of the trade secrets was acquired by improper means or under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, and that their

knowledge of Philips' trade secrets was derived improperly or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secrets or limit their use.

95.     Defendants' actions have been knowing, deliberate, willful, wanton, reckless, and in utter disregard of Philips' rights.

96.     Upon information and belief, as a result of Defendants' misappropriation of Philips' trade secrets, Philips has suffered actual damages in an amount to be proven at trial.  At a minimum, Defendants have gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

97.     Defendants' conduct, and their ongoing and continuing use of the trade secrets and proprietary and confidential information of Philips, has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.

98.     Philips has been damaged by all of the foregoing and is entitled to an award of Defendants' profits, exemplary damages and attorneys' fees and costs.

99.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have violated the DTSA, 18 U.S.C. § 1836.

### COUNT V

*West Virginia Uniform Trade Secrets Act, W. Va. Code § 47-22-9, et seq.*

100.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

101.     Philips owns and possesses certain confidential, proprietary, and trade secret information, as alleged above and below, in Philips' proprietary software for the Philips systems

and Philips' service and diagnostic software.

102.    Philips' proprietary software, documentation, and access control systems contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.  These measures include, for example, implementing systems of access registration, access control measures, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

103.    Philips has expended significant money and effort in developing Philips' proprietary software and access control systems, and the information would be difficult to properly acquire or duplicate by Defendants or other competitors of Philips.

104.    Philips' proprietary software and access control systems derive independent economic value to Philips by not being generally known because, among other reasons, they allow Philips to secure the Philips systems and grow its relationships with its customers; nor are Philips' trade secrets readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.

105.    Upon information and belief, Defendants misappropriated some or all of these trade secrets by improper means for their own use and/or benefit without express or implied consent by Philips.  At the time of their use of such trade secrets, Defendants knew or had reason to know that their knowledge of the trade secrets was acquired by improper means or under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, and that their knowledge of Philips' trade secrets was derived improperly or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secrets or limit their use.

106.    Defendants' actions have been knowing, deliberate, willful, wanton, reckless, and

in utter disregard of Philips' rights.

107.    Upon information and belief, as a result of Defendants' misappropriation of Philips' trade secrets, Philips has suffered actual damages in an amount to be proven at trial. At a minimum, Defendants have gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

108.    Defendants' conduct, and their ongoing and continuing use of the trade secrets and proprietary and confidential information of Philips, has caused, and will cause, Philips repeated and irreparable injury. Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.

109.    Philips has been damaged by all of the foregoing and is entitled to an award of actual damages and unjust enrichment.

110.    Because Defendants scheme is both willful and malicious, and is conducted in bad faith, Philips is entitled to an aware of exemplary damages and attorneys' fees and costs under W. Va. Code § 47-22-4.

111.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have misappropriated trade secrets and have violated state trade secret acts, including the W. Va. Code § 47-22-9.

## COUNT VI

### *Unfair Competition*

112.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

113.    As set forth in above allegations, Defendants have engaged in dishonest and fraudulent business conduct.  For example, Defendants have engaged in a pattern of conduct,

including hacking into Philips systems and Philips protected computers, using false credentials and certificates and making false representations to Philips, which is contrary to honest practice in industrial and commercial matters.

114.    Defendants undertook the foregoing acts to gain an unfair competitive advantage over Philips and to tortuously interfere with Philips prospective business relations.

115.    Defendants engaged in the foregoing acts with the knowledge and disregard for Philips' rights and with the intention of causing harm to Philips and benefiting Defendants.

116.    Defendants are unfairly competing in the marketplace. Upon information and belief, Defendants' actions have directly and proximately caused, and may further cause, Philips to lose clients, customers, income, and goodwill.  In addition to proximately causing Philips to suffer monetary damages, Defendants' actions have caused Philips to suffer damages for which Philips has no adequate remedy at law. For this reason, Defendants should be enjoined and restrained by order of this Court, in addition to monetary damages.

## COUNT VII

### *Fraud*

117.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

118.    Defendants have made false representations of material fact to Philips by impersonating a Philips FSE at least in or about August 2020.

119.    Defendants created, activated, or utilized counterfeit, intentionally modified, or otherwise unauthorized IST certificates, knowing that counterfeit, intentionally modified, or otherwise unauthorized IST certificates would grant Defendants access to restricted Philips software.  Defendants created and/or used these certificates with false identifying information, and

hid their true identities from Philips.

120.    Defendants made these false representations knowing that Radon was not, in fact, a Philips FSE, and that Defendants have never been granted access to confidential, proprietary and/or trade secret CSIP material.  Defendants also knew that, by using the access credentials of a Philips FSE, they would be able to access software tools and documentation from the Philips systems.

121.    Defendants' false representations were reasonably calculated to deceive Philips into believing that Defendants were a Philips FSE and that Defendants were authorized to obtain access to the Philips systems with FSE-level credentials.

122.    Defendants' false representations to Philips were made knowingly and with the intention of deceiving Philips to believe that Radon was a Philips FSE having Philips FSE-level access credentials.

123.    Philips was in fact deceived by Defendants' false representations, communicated via Philips network interfaces because Defendants hid their true identities.  Philips also relied upon the counterfeit, intentionally modified, or otherwise unauthorized IST certificates that Defendants used in order for Defendants to gain access to Philips' restricted software and information.

124.    As a result of Defendants' use of false accounts and counterfeit, intentionally modified, or otherwise unauthorized IST certificates, Philips has suffered damages by Defendants having gained unauthorized access under the false pretense that Radon was a Philips FSE whom Philips authorized to access such material.  And as a result of Defendants' access, Defendants have caused harm to Philips by enabling unlicensed option.

125.    As a result of Defendants' false representations, Philips has been harmed by Defendants' ongoing unfair competitive efforts, to which Defendants' fraudulent actions have

materially contributed.

## **JURY TRIAL DEMANDED**

Philips requests a jury trial on all issues and claims so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Philips respectfully requests that this Court:

A. issue an order preliminarily and permanently enjoining Defendants and all of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation or privity with any of them, from further misconduct including, but not limited to, fraudulent acts, misappropriation of Philips' trade secrets under the DTSA and WVUTSA, violations of the CFAA, violations of WVCCAA, violations of the DMCA, and other unfair and deceptive trade practices;

B. enter a final order in Philips' favor and holding Defendants jointly liable for all claims set forth herein;

C. enter an order requiring an accounting of profits;

D. award monetary damages to Philips, including but not limited to compensatory damages, enhanced, statutory damages, and punitive damages to the extent recoverable by law;

E. award Philips its attorneys' fees and costs to the extent recoverable by law;

F. award Philips any other damages and/or relief deemed appropriate by the Court, including without limitation, disgorgement of Defendants' profits attributable to their misconduct.

Dated:  May 13, 2021                        Respectfully submitted,

                                    By:
                                        /s/      James J.A. Mulhall

                                        James J.A. Mulhall (WV# 6491)
                                        STEPTOE & JOHNSON PLLC
                                        400 White Oaks Blvd.
                                        Bridgeport, WV  26330
                                        Telephone: (304) 353-8000
                                        Facsimile:  (304) 933-8183

                                        Michael D. Mullins (WV# 7754)
                                        STEPTOE & JOHNSON PLLC
                                        707 Virginia Street, East
                                        Charleston, WV 25301
                                        Telephone:  (304) 353-8000
                                        Facsimile:  (304) 933-8180

                                        James T. Hultquist (*pro hac vice* pending)
                                        Email:  jhultquist@reedsmith.com
                                        Jennifer Y. DePriest (*pro hac vice* pending)
                                        Email:  jdepriest@reedsmith.com
                                        Ismail C. Kuru (*pro hac vice* pending)
                                        Email:  ikuru@reedsmith.com
                                        REED SMITH LLP
                                        10 South Wacker Drive
                                        Chicago, IL 60606-7507
                                        Telephone:  (312) 207-1000
                                        Facsimile:  (312) 207-6400

                                        Christopher J. Pulido (*pro hac vice* pending)
                                        Email:  cpulido@reedsmith.com
                                        REEDSMITH LLP
                                        101 Second Street, Suite 1800
                                        San Francisco, CA 94105-3659
                                        Telephone:  (415) 543-8700
                                        Facsimile:  (415) 391-8269

                                        *Counsel for Plaintiff*