IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIPS NORTH AMERICA LLC,

        Plaintiff,

v.                                      CIVIL ACTION NO. 2:21-cv-00298

RADON MEDICAL IMAGING CORPORATION-WV, et al.,

        Defendants.

MEMORDANUM OPINION AND ORDER

Pending before the court are Defendant Ultrasound Online LLC's Motions to Dismiss the Amended Complaint [ECF No. 52] and to Stay Discovery [ECF No. 78]. For the following reasons, the Motion to Dismiss is **DENIED** and the Motion to Stay is **DENIED as moot**.

I. Background

Plaintiff Philips North America LLC ("Philips") develops, sells, and services medical imaging systems, including ultrasound machines. [ECF No. 28, at 1]. Some features of these machines are not standard—instead, the software options desired by the customer are licensed directly to them by Philips for a price. *Id.* at 6. For each of the Philips machines, only authorized Philips employees can enable the non-standard software options, only the non-standard software options purchased for that specific system are enabled, and only specific, authorized end-users of the machine— who are subject to non-disclosure agreements—can access the non-standard software

options. *Id.* at 10, 14. Philips presents that it has made considerable investments in its proprietary software and has gone to these significant measures to limit an end-user's access to features they have not purchased from Philips because these features and software are confidential trade secrets. *Id.* at 7. Philips derives economic value from the information being inaccessible to unauthorized customers and Philips's competitors. *Id.* at 10.

Philips recently discovered that two of its ultrasound machines purchased by King's Daughters Medical Center ("King's Daughters") in Ashland, Kentucky, had a multitude of software options enabled without Philips's authorization. *Id.* at 11. Philips values the ability to access these features at over $300,000. *Id.* Philips's Amended Complaint alleges that Defendants, Radon Medical Imaging Corporation-WV ("Radon-WV"), Radon Medical, LLC, Probo Medical, LLC ("Probo"), and Ultrasound Online LLC, which are medical device wholesalers and suppliers that make up the supply chain of the machines from Philips to King's Daughters, improperly hacked and enabled non-standard software options on the two ultrasound machines. *Id.* at 2, 10–11. Philips claims that Defendants improperly enabled these software features so they could sell Philips's proprietary software to their customers at a discount and compete directly with Philips for commercial gain. *Id.* at 14. Philips states that the purpose of this lawsuit is "to identify the party, or parties, responsible for the hacking." [ECF No. 54, at 15].

2

Philips's original complaint listed only Radon-WV and Radon Medical as defendants. [ECF No. 1]. These defendants moved to dismiss the complaint, and I denied the motion. [ECF Nos. 13, 19]. Philips amended its complaint and now brings the following claims against all named Defendants: Count I, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Count II, violation of the West Virginia Computer Crime and Abuse Act, W. Va. Code § 61-3C-1 *et seq.*; Count III, violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 and 1202; Count IV, violation of the Defendant Trade Secrets Act, 18 U.S.C. § 1836; Count V, violation of the West Virginia Uniform Trade Secrets Act, W. Va. Code § 47-22-9, *et seq.*; and Count VI, Unfair Competition. *See generally* [ECF No. 28].

Defendant Ultrasound Online filed its pre-Answer Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this court cannot properly exercise personal jurisdiction over it. [ECF No. 52]. Ultrasound Online is a wholesale medical device provider that is both incorporated and has its principal place of business in Arizona. *Id.* at 1. Ultrasound Online's involvement in this case is at the top of the supply chain. King's Daughters Medical Center in Kentucky contracted with Radon-WV, a medical imaging device distributor incorporated in South Carolina with its principal place of business in Charleston, West Virginia, for two Philips ultrasound machines. [ECF No. 28, at 4, 12]. Radon-WV contracted in turn with Probo, a medical device sales and servicing company incorporated in Delaware with its principal place of business in Indiana, for two Philips ultrasound machines with

3

software configured to King's Daughters's specifications. *Id.* Probo, in turn, contracted with Ultrasound Online to supply the two machines. *Id.* at 13. Upon Probo's request, Ultrasound Online drop-shipped the two machines directly to Radon-WV's Ona, West Virginia facility, where the machines were thereafter delivered to King's Daughters in Kentucky. *Id.*

In support of its motion, Ultrasound Online argues that its only contact with the forum state of West Virginia was its single delivery of the two machines at issue to Radon-WV's facility in Ona, West Virginia. [ECF No. 53, at 2]. Ultrasound Online has no offices, real property, bank accounts, or employees within the state, nor does it advertise within the state. *Id.* at 3. Ultrasound argues that given these facts, this court's exercise of general or specific personal jurisdiction over Ultrasound Online would be improper because it does not have sufficient minimum contacts with West Virginia, and Philips has failed to assert that an act or omission by Ultrasound Online in West Virginia caused it tortious injury. *Id.* at 6.

Philips argues that the allegations in its Amended Complaint establish on reasonable inference that Ultrasound Online improperly hacked, sold, and shipped the machines directly to West Virginia, where they entered the stream of commerce. [ECF No. 54, at 12]. Taking the allegations in the light most favorable to Philips, Philips argues that its "claims against Ultrasound Online arise out of Ultrasound Online's activities directed at West Virginia" and thus, the court's exercise of personal jurisdiction over Ultrasound Online comports with due process. *Id.* at 13–14.

4

## II. Legal Standard

When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction. *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). For example, when the court decides a 12(b)(2) motion by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, as is the case here, the plaintiff need only make a prima facie case of personal jurisdiction to survive the jurisdictional challenge.[1] *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). As an ultimate issue, the plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence. *Id.*

This "prima facie case" analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6). When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff, assume credibility, and draw the most favorable

---

[1] Philips argues that because Ultrasound Online did not support its Rule 12(b)(2) Motion to Dismiss with an affidavit contradicting Philips's assertion of jurisdiction, it failed to raise a proper challenge to this court's exercise of personal jurisdiction. [ECF No. 54, at 3–6]. As Ultrasound Online correctly points out, there is no Federal Rule of Civil Procedure or binding court ruling that requires the submission of an affidavit to initiate a plaintiff's burden of establishing the existence of personal jurisdiction. [ECF No. 58, at 3–5]; *see also Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019) (explaining that courts *may* consider affidavits from any party when applying the prima facie standard); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (same). While Philips argues that the requirement for an affidavit is "well-settled," it relies entirely on cases outside of this jurisdiction to make that argument. [ECF No. 54, at 4–5].

5

inferences for the existence of jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *Combs*, 886 F.2d at 676.

### III. Discussion

In a personal jurisdiction analysis, (1) a state's long-arm statute must authorize the exercise of jurisdiction under the facts presented, and (2) the statutory assertion of personal jurisdiction must comply with due process. *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). When a state's long-arm statute is coextensive with the full reach of due process, as West Virginia's is, the statutory inquiry necessarily merges with the Constitutional inquiry, and instead, the decision centers on whether exercising personal jurisdiction is consistent with the Due Process Clause. *Id.* at 628.

Due process requires both that the defendant "purposefully established minimum contacts within the forum State" and that "the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotation marks omitted). To establish minimum contacts, a plaintiff may pursue either general or specific jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). General or "all-purpose" jurisdiction is properly exercised when the defendant's contacts with the forum are so strong that it can be considered "at home" there and thus be sued there on any cause of action without offending due process. *Id.* at 139. General jurisdiction is not at issue here because Philips asserts that only specific jurisdiction applies and, at any rate, Ultrasound Online cannot be considered "at home" in West

6

Virginia. *See* [ECF Nos. 53, at 7–8; 54, at 9 n.3]; *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 612 (S.D. W. Va. 2020) ("Absent extraordinary circumstances, neither present here nor alleged to be present here, a corporate entity is subject to general jurisdiction only in the states where it is formed and has its principal place of business.").

In analyzing the Defendant's contact with the forum state for specific jurisdiction, the court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020). The Supreme Court has stressed that the minimum contacts analysis must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

For the first element, a defendant has purposefully availed itself of the privilege of conducting business in a state—and thus the benefits and protections of the state's laws—when the defendant "deliberately has engaged in significant activities within a [s]tate" such that it "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," or due to "the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475–76. Even a single contact may be sufficient to create jurisdiction when the cause of action arises

7

out of that single contact. *Id.* at 475 n.18; *see also Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) ("a single act by a defendant can be sufficient . . . to satisfy the necessary . . . minim[um] contacts. . . ."). When the defendant has availed itself of the privilege of conducting business in a forum by purposefully directing its commercial efforts to the residents of another state, jurisdiction cannot be avoided merely because the defendant did not physically enter the forum state. *Id.* at 476.

Here, I find that Ultrasound Online, by entering into a contract that was to be performed in West Virginia and then performing that contract in West Virginia, purposefully availed itself of the laws of West Virginia as they relate to that contact with the forum. *See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (performance of contractual duties within the forum can constitute purposeful availment). Philips has presented that Ultrasound Online contracted with Probo for nearly $150,000 to deliver the two machines at issue, and Ultrasound Online did in fact deliver the machines into West Virginia via direct shipment to a West Virginia resident. [ECF Nos. 53, at 2; 54, at 1–2]. This activity was not the "result of random, fortuitous, or attenuated contacts" or due to "the unilateral activity of another party or a third person" but due to Ultrasound Online's own actions. That is to say, this is not a case where Ultrasound Online delivered the product into the stream of commerce in another state and a third-party subsequently and independently brought the product into the forum. *See J. McIntyre Mach., Ltd. v.*

8

*Nicastro*, 564 U.S. 873, 886 (2011) (finding personal jurisdiction over defendant improper where defendant did not independently send its machine to forum). Although the reason Ultrasound Online delivered the machine to West Virginia was due to Radon-WV's underlying contract with Probo, Ultrasound Online knew that its contract with Probo would require performance in West Virginia, entered the contract anyway, and performed the contract by delivering its machines—the two machines at issue in this case—to West Virginia. This contact with the forum is enough for the court to exercise personal jurisdiction over Ultrasound Online in matters arising out of this contact.

For the second element—whether a plaintiff's claims arise out of or relate to a defendant's activities directed at the state—"there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. . . ." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (alteration in original) (internal quotation marks omitted). For a suit to "relate to" a nonresident defendant's contacts with the forum States, the inquiry does not always require proof of causation or proof that the plaintiff's claim came about because of the defendant's in-state conduct. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).

Here, I find that Philips has made a prima facie showing, on reasonable inference, that its claims against Ultrasound Online arise out of Ultrasound Online's

9

contact with the forum. Although Ultrasound Online argues that its involvement in this case is removed from Philips's causes of action, Philips alleges that this case is about the third-party hacking and sale of two improperly enabled ultrasound machines, and Ultrasound Online sold the two machines at issue and delivered them into the stream of commerce in West Virginia. [ECF Nos. 53, at 6; 54, at 6]. Though limited, Ultrasound Online's contact with West Virginia involves precisely the subject matter of this lawsuit.

Philips's complaint alleges that each defendant hacked the ultrasound machines at issue because it does not know which party is the malefactor or where the hacking occurred, and "[t]his lawsuit seeks to identify the party, or parties, responsible for the hacking." *Id.* at 15. When Philips asserted these claims against two defendants, I found "that the allegations in the Complaint state a plausible claim for relief against each defendant." [ECF No. 19, at 9]. I follow the same logic in analyzing Philips's Amended Complaint. Taking Philips's allegations and available evidence relating to personal jurisdiction in the light most favorable to Philips, I find that Philips has made a prima facie showing that its claims arise out of or relate to Ultrasound Online's activities directed at West Virginia. Reading the allegations in the complaint as true and making reasonable inferences in favor of Philips, Ultrasound Online hacked the machines and introduced into the stream of commerce in West Virginia two machines with hundreds of thousands of dollars' worth of proprietary software improperly enabled. Because that contact is the basis of this

10

lawsuit, this court's exercise of personal jurisdiction over Ultrasound Online is proper.

For the third element, the Court considers the constitutional reasonableness of exercising jurisdiction by evaluating several factors, to include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001). In other words, the exercise of jurisdiction should not "make litigation so gravely difficult and inconvenient that a party is unfairly at a severe disadvantage in comparison to his opponent." *Id.*

Here, I find the exercise of personal jurisdiction over Ultrasound Online constitutionally reasonable. As the Fourth Circuit has found, any burden that litigating in this forum places on Ultrasound Online is lessened by the fact that Ultrasound Online has already retained counsel in West Virginia to represent it in this matter. *See Tire Eng'g & Distribution, LLC,* 682 F.3d at 304–05 (citing *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009)). And although Philips is not a West Virginia corporation, there is a strong interest for the State to ensure that its laws, as well as federal laws, are not violated within its borders. As in *Tire Eng'g*, some of Philips's claims are based on West Virginia law,

11

triggering West Virginia's particular interest in this dispute. *Id.* Finally, as in *Tire Eng'g*, Philips has a substantial interest in obtaining convenient and effective relief after it "carved out a market niche by cultivating" a distinctive mark and product line and invested considerable time and expense to develop its proprietary software. *Id.* at 303. Philips is thus entitled to utilize the judicial system in West Virginia to protect and vindicate its intellectual property and other legal rights. *See CFA Inst.*, 551 F.3d at 297. This court's exercise of specific personal jurisdiction over Ultrasound Online serves substantial justice because it will only lead to increased efficiency in determining liability, and Ultrasound Online is at no unfair disadvantage.

Although Ultrasound Online's contact with this forum is slight, specific personal jurisdiction is properly exercised here because at this preliminary stage, Philips has made a prima facie showing that its claims arise out of Ultrasound Online's contact. As I have previously stated, "Discovery in this case can and will reveal whether one or [more] Defendants hacked the ultrasound machines at issue here." [ECF No. 19, at 5]. As with all elements of its case, Philips must ultimately prove by a preponderance of the evidence that Ultrasound Online is amenable to the personal jurisdiction of this court.

## IV. Conclusion

For the foregoing reasons, Defendant Ultrasound Online's Motion to Dismiss the Amended Complaint [ECF No. 52] is **DENIED**. Defendant Ultrasound Online's

Motion to Stay Discovery [ECF No. 78] is **DENIED as moot**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 15, 2022

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE