UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIPS NORTH AMERICA LLC,

    Plaintiff,

v.      Civil Action No. 2:21-cv-00298

PROBO MEDICAL LLC,

    Defendant.

# ORDER

This matter is before the undersigned on the parties' opposing "Motion for Protective Order," filed by Defendant Probo Medical, LLC ("Defendant" or "Probo"), and "Motion to Compel," filed by Plaintiff Philips North America LLC ("Plaintiff" or "Philips"). (ECF Nos. 85; 91.) Each party's motion concerns the same central dispute regarding the proper scope of discovery in this matter. On November 15, 2022, the parties appeared, by counsel, for oral argument on the pending motions. The motions were held in abeyance for a short time following the hearing to permit the parties an opportunity to either reach a compromise on their discovery dispute or, if not possible, to narrow their areas of disagreement to the greatest possible extent. (ECF No. 120.) However, the parties advised in their December 8, 2022 Joint Status Report Regarding Discovery Dispute (ECF No. 126) that they continue to be unable to reach an agreement; accordingly, the undersigned finds that both motions are now ripe for adjudication. Having considered the written materials and the arguments, each motion is **GRANTED IN PART** and **DENIED IN PART**, as set forth below.

I.  **Background**

Plaintiff Philips North America LLC ("Philips") develops, sells, and services medical imaging systems, including ultrasound machines. (ECF No. 80, at 1.) Some features of these machines are not standard—instead, the software options desired by the customer are licensed directly to them by Philips for an additional price. *See id.* For each of the Philips machines, only authorized Philips employees can enable the non-standard software options, only the non-standard software options purchased for that specific system are enabled, and only specific, authorized end-users of the machine—who are subject to non-disclosure agreements—can access the non-standard software options. *Id.* at 1-2. According to Philips, it has made considerable investments in its proprietary software and has gone to these significant measures to limit an end-user who has not paid for the non-standard features from accessing them, because they are confidential trade secrets from which Philips derives economic value from the information being inaccessible to unauthorized customers and Philips's competitors.

Philips alleges that during its investigation of third party medical device repair company, 626 Holdings, LLC and its principal, Alexander Kalish, Philips discovered that Radon Medical, LLC purchased a custom laptop from Kalish that would allow Radon to access these proprietary features without a license to do so. Philips alleges that the remaining Defendant—Probo Medical, LLC ("Probo")—obtained this stolen information from Radon in order to gain access to the premium features on the Philips imaging machines without paying Philips for a license to do so and without Philips's consent. Philips also alleges it recently discovered that two ultrasound machines purchased by King's Daughters Medical Center ("KDMC") in Ashland, Kentucky, had a multitude of software options enabled without Philips's authorization, which it values at over

$300,000. (ECF No. 80 at 2.) Philips's Amended Complaint alleged that in concert with Probo, several entities, including Radon Medical Imaging Corporation-WV, Radon Medical, LLC, and Ultrasound Online LLC—medical-device wholesalers and suppliers that make up the supply chain of the machines from Philips to KDMC—improperly hacked and enabled non-standard software options on the two ultrasound machines. *Id.* at 2. Philips claims that Defendants improperly enabled these software features so they could sell Philips's proprietary software to their customers at a discount and compete directly with Philips for commercial gain. *Id.* Philips states that the purpose of this lawsuit is "to identify the party, or parties, responsible for the hacking." *Id.*

Philips also suspects that Probo, through a network of related companies, has used other hacking tools to carry out the same enterprise on a larger scale. Specifically Philips alleges as follows:

> Probo is engaged in a pattern and practice of purchasing and selling systems that it knows and/or reasonably should know have been modified without authorization from Philips. Over the past several years, Probo has acquired and/or purchased the assets from companies engaged in similar services and business activities, which Probo knows use hacking tools and other methods to unlawfully gain access to Philips' proprietary tools and to enable unlicensed options on Philips systems. Those companies include, without limitation, KPI Healthcare Inc. . . . . Upon information and belief, Probo directs, authorizes and/or otherwise approves the unlawful methods used by its subsidiaries on the Philips systems it acquires in these transactions.

(ECF No. 28 at 12 ¶ 52.)

Based upon these allegations, Philips brings the following against Probo: violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("Count I"); violation of the West Virginia Computer Crime and Abuse Act, W. Va. Code § 61-3C-1 et seq. ("Count II"); violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 and 1202 ("Count III"); violation of the Defendant Trade Secrets Act, 18 U.S.C. § 1836 ("Count IV");

violation of the West Virginia Uniform Trade Secrets Act, W. Va. Code § 47-22-9, et seq. ("Count V"); and Unfair Competition ("Count VI"). (ECF No. 28.)

Probo's Motion for Protective Order accuses Philips of serving "fishing-expedition" discovery, and asks the Court to limit Philips's written discovery requests to information about the two KDMC machines specifically identified in the Complaint and arguing that anything more than that is disproportional to the needs of the case. Philips's Motion to Compel seeks the opposite: Probo's full compliance with its written discovery requests.

## II. Legal Standards

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "[I]t remains true that "relevancy in discovery is broader than relevancy for purposes of admissibility at trial." *Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, 3:15-CV-13415, 2016 WL 5219633, at *2 (S.D.W. Va. Sept. 20, 2016) (citing *Amick v. Ohio Power Co.*, 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D. W. Va. Dec. 18, 2013)). Moreover, "notwithstanding Rule 26(b)(1)'s recent amendment placing an emphasis on the proportionality of discovery, the discovery rules, including Rule 26, remain subject to a 'broad and liberal construction.'" *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2 (citing *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. Jan. 25, 2016)).

Nonetheless, simply because information is discoverable under Rule 26, "does not mean that discovery must be had." *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2. For good cause shown under Rule 26(c), the court may issue a protective order, restricting or prohibiting discovery that seeks relevant information when necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden

4

or expense." Fed. R. Civ. P. 26(c). In addition, Rule 26(b)(2)(C) requires the court, on motion or on its own, to limit the frequency and extent of discovery under certain circumstances, and district courts have "substantial latitude to fashion protective orders." *See Beattie v. Skyline Corp.*, No. 3:12-CV-02528, 2014 WL 5039678, at *2 (S.D. W. Va. Oct. 8, 2014) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii)); *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2. "To succeed under the good cause standard of Rule 26(c), the party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2. Rather, the objecting party "must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome, [and] . . . claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Id.*

Rule 37 of the Federal Rules of Civil Procedure governs motions for an order compelling discovery responses. The Rule provides, in relevant part:

> [a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: […] (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."

Fed. R. Civ. P. 37(a)(3)(B)(iii-iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The Federal Rules of Civil Procedure confer "substantial discretion" to the Court "in managing discovery." *Doe v. Cabell Cty. Bd. of Educ.*, 3:21-cv-31, 2022 WL 288193, at *4 (S.D. W. Va. Jan. 31, 2022) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of*

5

*Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). "Resolution of a motion to compel," therefore, "is generally left within the broad discretion of the District Court." *VICA Coal Co. v. Crosby*, 212 F.R.D. 498, 504 (S.D. W. Va. 2003) (citing *Lone Star*, 43 F.3d at 929) (denial of motion to compel reviewed on appeal for abuse of discretion); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and *LaRouche v. National Broadcasting Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) (same)).

### III.  Discussion

Probo seeks a protective order limiting the scope of "Plaintiff's First Set of Requests for Production of Documents and Things" (ECF No. 85-3), and "Plaintiff's First Set of Interrogatories" (ECF No. 85-4) (collectively, Philips's "discovery requests"). Probo's position is essentially that the discovery requests should extend in scope only to the two KDMC machines identified with specificity in the Complaint—anything beyond that would be an improper "fishing expedition." (ECF No. 86 at 10.) The central basis for Probo's position is a September 27, 2021 letter from Probo's attorney to Philips's counsel shortly after this case was filed. (ECF Nos. 85-2, 86 at 3.) The letter stated that Probo purchased the two machines from Defendant Ultrasound Online, LLC and resold the machines to Defendant Radon. (ECF No. 85-2.) The letter further explained that Ultrasound Online "drop shipped both machines directly to Radon," and therefore "Probo never touched, inspected, or handled" either machine. *Id.*

"Fishing expeditions" that exceed the boundaries of the complaint and are based purely on unsupported speculation are improper. *See Cuomo v. Clearing House Assn., LLC*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing").

6

*See also Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015); *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 9718873, at *15 (S.D.W. Va. Sept. 21, 2020), *objections overruled*, 2021 WL 2345972 (June 8, 2021) ("Discovery is a fishing expedition when it goes beyond the pleadings' allegations"); *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1327 (2d Cir. 1977) (holding that Plaintiff's request for discovery was "nothing more than a[n] [impermissible] fishing expedition" because Defendant made no showing, "through affidavits or other means," to support his claim); *Alvarado v. GC Dealer Servs. Inc.*, No. 18CV2915SJFSIL, 2018 WL 6322188, at *4 (E.D.N.Y. Dec. 3, 2018) (denying Defendants' discovery request of Plaintiff's alleged social security benefits because Defendants were only speculating how these documents could help them prepare a defense to Plaintiff's FLSA and NYLL claims against Defendants); *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition….") (denying Plaintiff's request to compel disclosure of a Defendant's address, in order to verify whether Defendant has the means to pay punitive damages, because the lack of facts in Plaintiff's request, implied that this was an impermissible fishing expedition); *Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (denying, in part, Defendant's discovery request to the documents which Defendant failed to establish objective support).

      Probo's reliance on the September 27, 2021 letter does not vitiate the relevance of the discovery sought. The extent of Probo's involvement in the sale of the two modified ultrasound machines to KDMC is a core issue of fact in this case. A mere post-suit letter from Probo's counsel disclaiming Probo's role, without more, is not dispositive of this

7

issue of fact—and Probo has wholly failed to set forth any authority to the contrary. Particularly where, as here, Philips pointed to conflicting evidence as to the extent of Probo's involvement in the transaction, (*see* ECF No. 114-1), Philips's requests are centrally relevant.

Furthermore, Philips's inquiry beyond the scope of the two KDMC machines into Probo's sale of other Philips ultrasound machines is likewise central to the allegations in the Complaint. Philips's Amended Complaint expressly alleges that Probo's alleged involvement in modifying the KDMC machines is part of a larger "pattern and practice." (ECF No. 28 at 12 ¶ 52.) In fact, Probo's alleged pattern and practice of profiting from procuring and selling Philips systems that it knows or should have known have been adulterated—either directly, or through its subsidiaries—is the very subject matter of this litigation. When Philips developed this point further at the motions hearing, Probo's response was that the allegation was made only on the "information and belief" of Philips and lacks specificity. While the Federal Rules of Civil Procedure require fraud claims to be pled with specificity, *see* Fed. R. Civ. P. 9(b), there are no surviving fraud claims in this case. Probo's position seems to amalgamate the Rule 9(b) fraud standard with the proportionality standard of Rule 26(b)(1) to frame any attempt to seek information outside of the two KDMC machines in Philips's discovery requests as a fishing expedition. This position is not supported by legal authority. Combined with Philips's evidence of Probo's potentially broader involvement, (*see, e.g.,* ECF No. 114-1), the relevance of the discovery sought is not merely speculative. Probo has simply failed to demonstrate good cause to limit the scope of discovery in this matter to only the two KDMC machines.

Moreover, contrary to Probo's representations, Philips's discovery requests for the most part appear to be fairly specific, proportional, and narrowly-tailored to relevant

facts; for instance, Philips refers to specific machines' serial numbers, specifically identifies unlicensed options that it believes were enabled and seeks information regarding only those options, and requests information regarding Probo's dealings and transactions with business entities and individuals that Philips's evidence appears to potentially tie to the modification of Philips's systems. These requests are logically related to the allegations in Philips's Amended Complaint that Probo "engaged in a pattern and practice of purchasing and selling systems that it knows and/or reasonably should know have been modified without authorization from Philips." (ECF No. 28 at 12 ¶ 52.) This falls far short of the type of "undirected rummaging through . . . records for evidence of some unknown wrongdoing" that constitutes an improper fishing expedition. *Cuomo*, 557 U.S. at 531. Accordingly, the undersigned **FINDS** that Philips's Motion to Compel is warranted, in part.

However, Probo's proportionality argument stands on more solid ground. Philips's discovery requests are overbroad in scope in two respects. As Probo pointed out, Philips sought documents and communications related to any Philips machine that Probo had ever acquired, purchased, or sold over a time period of more than seven years. At oral argument on the pending motions, counsel for Philips was unable to articulate a sound logical basis for such an extensive seven-year period of time. Further, Philips's request for information regarding "all documents and communications" related to *any* Philips machine is relatively undirected in contrast to Philips's more focused requests that were tethered to specific machines and transactions—a fact that Philips appears to have acknowledged in its communications with Probo following the motions hearing. (*See* ECF No. 126-1 at 9.)

9

The undersigned therefore **FINDS** that Probo's Motion for Protective Order is warranted, in part; taking into account the proportionality standard set forth in Rule 26(b)(1), Probo's supplemental responses to Philips's discovery requests shall be **LIMITED** to the time period between May 13, 2017, through the date this suit was filed, which is May 13, 2021. Likewise, Probo's supplemental responses shall be **LIMITED** in scope to only ultrasound machines, as opposed to any Philips machine. Finally, Philips's discovery requests are hereby **MODIFIED** to reflect the express offers of compromise made by Philips in its November 29, 2022, and December 7, 2022 emails from Philips's counsel Jennifer DePrist to opposing counsel Eric McKeown, Adam Arceneaux, and Niall A. Paul. (ECF No. 126-1.)

### IV. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED** as follows:

(1) Probo's "Motion for Protective Order," (ECF No. 85) is **GRANTED IN PART** and **DENIED IN PART**;

(2) Philips's "Motion to Compel," (ECF No. 91) is **GRANTED IN PART** and **DENIED IN PART**;

(3) No later than thirty (30) days from the date of entry of this Order, which is **January 18, 2023**, Probo **SHALL** serve supplemental responses to Philips's discovery requests, which are **LIMITED** and **MODIFIED** as set forth above.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: December 19, 2022

_____
Dwane L. Tinsley
United States Magistrate Judge