IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIPS NORTH AMERICA LLC,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:21-cv-00298

PROBO MEDICAL, LLC, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are the Motion to Compel Compliance with Discovery Order and for Sanctions, [ECF No. 146], and renewed Motion for Sanctions, [ECF No. 225], filed by Plaintiff Philips North America LLC ("Philips"). All discovery disputes in this matter were referred to United States Magistrate Judge Dwane L. Tinsley pursuant to 28 U.S.C. § 636 and this court's Standing Order of January 4, 2016, which was entered in this case on May 16, 2021. [ECF No. 10].

After a hearing on the above-mentioned motions, Judge Tinsley submitted his Proposed Findings of Fact and Recommendation ("PF&R"), [ECF No. 369], finding that Probo's dilatory actions throughout the discovery process resulted in an unreasonably substantial delay—over 500 days between the service of the initial discovery requests and the completion of Probo's responses—that severely prejudiced Philips' ability to prepare its case for trial, and, therefore, recommending the court

(1) grant Philips' Motion to Compel, [ECF No. 146], and renewed Motion for Sanctions, [ECF No. 225]; (2) enter an order for default judgment, finding Defendant Probo Medical, LLC ("Probo") liable as to each of Philips' legal claims and limit the trial in this matter solely to the issue of Philips' damages; (3) award Philips' reasonable fees and costs incurred in prosecuting the motions to compel and for sanctions and order Philips to submit an affidavit of fees and expenses, along with any supportive documentation or argument to justify the amount of fees and expenses requested, within fourteen (14) days of the court's ruling on the PF&R; (4) impose monetary sanctions against attorneys Adam Arceneaux and Eric McKeown (collectively, the "Ice Miller Attorneys"), personally, in an amount to be determined by Philips' above-mentioned affidavit; and (5) deny all pending motions regarding liability as moot. [ECF No. 369, at 33–34].

On February 2, 2024, Probo and the Ice Miller Attorneys, respectively, timely filed objections to the PF&R, [ECF Nos. 382, 386], as well as separate motions for leave to file exhibits to their objections, [ECF Nos. 383, 387]. The motions for leave to file exhibits have previously been ruled on by the court and will not be addressed here. Philips filed its Response to Probo's objections on February 13, 2024, [ECF No. 388], and its Response to the Ice Miller Attorneys' objections on February 16, 2024, [ECF No. 392]. The matter is now ripe for review.

The court has reviewed *de novo* those portions of the PF&R to which Probo and the Ice Miller Attorneys object. Ultimately, I find that Probo's pernicious discovery tactics—its improper objections to discovery requests, its failure to respond in a

manner consistent with federal and local rules, its misrepresentations to the court and Philips about its response status, and its persistent delays and efforts to circumvent its discovery obligations in direct violation of this court's Orders until the eleventh hour, when it dumped several hundreds of thousands of pages of discovery on Philips *after* the expert report deadline and with *only weeks* to digest the material before discovery ended—combined with its subsequent attempts to shift the blame for its conduct to other parties, merit sanctions. After considering other, less drastic sanctions, I further find that Probo's conduct, which has severely prejudiced not only Philips, but also the court, the public who depends on the court to timely administer justice, and the overall reputation of and respect for the judicial system, warrant the entry of default against Probo.

For these reasons and the ones that follow, the court **ADOPTS IN PART and REJECTS IN PART** the Magistrate Judge's PF&R, [ECF No. 369], **GRANTS** Philips' Motion to Compel, [ECF No. 146], and renewed Motion for Sanctions, [ECF No. 225], **ORDERS** the entry of a default judgment finding Probo liable as to each of Philips' legal claims, and **ORDERS** that this matter will proceed to trial solely on the issue of Philips' damages. The court further **ORDERS** that all pending motions regarding liability, [ECF Nos. 243, 244, 248, 251, 252, 256, 261, 262, 263, 271, 272, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 288, 289, 290, 291, 292, 293, 294, 297, 298, 299, 300, 301, 302, 322, 324, 325], are **DENIED as moot.** However, the court **FINDS** that the Ice Miller Attorneys are not liable for personal monetary sanctions.

I.    **Background**

First, an outline of the context of the suit, as well as a thorough examination of its pre-discovery procedural history, the lengthy discovery dispute, and the court's intervention in the discovery dispute is warranted.

A.    *Parties and Context*

The Plaintiff in this case, Philips, is a corporate entity that "develops, sells, supports, maintains, and services" medical-imaging systems, including ultrasound machines, and "the proprietary hardware, software, and documentation for such systems." [ECF No. 28, ¶ 1]. "Philips' proprietary software enables certain functions on Philips medical imaging systems and enables Philips to control, update, and track the use of its ultrasound software in the marketplace." *Id.* ¶2. Because Philips' proprietary software is created, owned, and copyrighted by Philips, end-users must pay for enabled features and additional options through licensing from Philips, and "only the specific authorized users of the machine can access the enabled features and software options" on a Philips-brand medical-imaging system. *Id.* ¶¶ 26, 28, 32. Philips claims it has "spent considerable time and money creating this software and developing access controls to limit and control access to these features" and that "[u]nauthorized access to or changed to a Philips system or its software puts Philips' proprietary software and trade secret information at serious risk[ ] and harms Philips' ability to control Philips' control access to its proprietary software and use of Philips systems." *Id.* ¶¶ 44–45.

The Defendant, Probo, is a limited liability company, [ECF No. 46, ¶ 5], that "initially focused on sales and service of ultrasound components" but has since "expanded its offerings to include refurbishment, sales, service, and distribution for new and pre-owned ultrasound systems" and other "new and pre-owned medical imaging equipment," [ECF 251-1, ¶ 2]. "Sales of ultrasound systems account for approximately one-third of Probo's revenue." *Id.* According to Probo, it "generally sources ultrasound equipment . . . either to satisfy a particular customer order or to populate Probo's inventory" for future customers. *Id.* ¶ 6. "When purchasing for inventory, . . . Probo's standard practice . . . is to procure ultrasound systems with as broad a set of options as possible, in order to maximize flexibility to satisfy the needs of unknown future users." *Id.* When satisfying an existing customer order for a machine that requires options that are not already installed in a machine in Probo's inventory, Probo "either purchases an additional machine with those options enabled, or it purchases the missing options from a supplier on a standalone basis," wherein "the supplier send[s] the purchased options file via email or a USB dongle." *Id.* Probo indicates repeatedly that this practice applies to sourcing and selling Philips-brand machines. *Id.*

This lawsuit centers around the alleged unlawful tampering or "hacking" of Philips systems by third-party companies to add or otherwise enable, transfer, or access certain features, options, or software without obtaining appropriate licensing from and/or payment to Philips. According to Philips, Probo is one such company that engages in this practice.

B.    *Pre-Discovery Procedural History*

i.    *Original Complaint*

On May 13, 2021, Philips initiated this civil action against Radon Medical Imaging Corporation-WV and Radon Medical, LLC (together, "Radon"), which are also entities engaged in the sale and servicing of medical-imaging devices, including Philips ultrasound machines. [ECF No. 1, ¶¶ 7–10]. In its Complaint, Philips alleged that it had suffered harm due to Radon's pattern and practice of tampering with— i.e., "hacking"—proprietary software access controls for the modification, purchase, and sale of Philips medical-imaging systems. *Id.* Philips claimed this pattern and practice of enabling extra options in its systems without compensation or the appropriate licensing allowed Radon to sell Philips systems at a discount, thereby competing directly with Philips for commercial gain. *Id.; see* [ECF No. 369, at 2–3]. As an example of this alleged wrongdoing, Philips alleged that "Radon altered proprietary software on two Philips-brand ultrasound machines that Radon sold to King's Daughters Medical Center ("KDMC") in Ashland, Kentucky (the "KDMC machines"), which were allegedly accessed and altered to enable more than $300,000 worth of extra options without authorization or license from [Philips]." [ECF No. 369, at 3].

Based on these allegations, Philips asserted seven causes of action against Radon: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("Count I"); (2) violation of the West Virginia Computer Crime and Abuse Act, W. Va. Code § 61-3C-1, *et seq.* ("Count 2"); (3) violation of the Digital Millennium Copyright Act, 17

6

U.S.C. §§ 1201 and 1202 ("Count III"); (4) violation of the Defendant Trade Secrets Act, 18 U.S.C. § 1836 (Count IV"); (5) violation of the West Virginia Uniform Trade Secrets Act, W. Va. Code §47-22-9, *et seq.* ("Count V"); (6) Unfair Competition ("Count VI"); and (7) Fraud ("Count VII"). *Id.* Philips also sought a permanent injunction to prevent Radon from further accessing Philips-brand systems and "further disclosing and/or using its confidential and trade-secret information." *Id.* (citing [ECF No. 1]).

### ii.    *Radon's Motion to Dismiss*

On August 21, 2021, Radon filed a Motion to Dismiss Philips' Complaint, [ECF No. 13], arguing that dismissal was appropriate under Rule 19 of the Federal Rules of Civil Procedure based on Philips' failure to join two "necessary" parties, Probo and Ultrasound Online, LLC ("Ultrasound Online")—two upstream suppliers of the KDMC machines, [ECF No. 14, at 5–7]. According to Radon, those two parties had provided the KDMC machines to Radon "with all of the software installed, configured and enabled," and Radon "made no additional adjustments to any of the software" on those machines. *Id.* at 3. Radon also asserted that dismissal was warranted because the Complaint "fail[ed] to state any claims against Radon." [ECF No. 13, at 1].

In its Opposition to the Motion to Dismiss, Philips' argued that Probo and Ultrasound Online were not necessary and indispensable parties under Rule 19, [ECF No. 16, at 2–7], and this court agreed, denying Radon's motion in that regard in its Memorandum Opinion and Order entered on August 11, 2021, [ECF No. 19, at 3–7].[1]

---

[1] The Court did, however, grant Radon's motion with respect to Philips' fraud claim. [ECF No. 19, at 9]. The case then proceeded to the discovery phase on August 27, 2021. *See* [ECF No. 23].

### iii.   Amended Complaint

On October 8, 2021, Philips filed its Amended Complaint, making substantially the same claims as the original Complaint save the previously dismissed fraud claim, and adding both Probo and Ultrasound Online as Defendants alleged involved in the purported option-hacking scheme.[2] [ECF No. 28]. Philips argues, in relevant part, that "[u]pon information and belief, Probo is engaged in a pattern and practice of purchasing and selling systems that it knows and/or reasonably should know have been modified without authorization from Philips." *Id.* at ¶ 52. Specifically, Philips alleges that for years, Probo has acquired or purchased systems from companies "which Probo knows use hacking tools and other methods to unlawfully gain access to Philips' proprietary tools and to enable unlicensed options on Philips systems" and "directs, authorizes and/or otherwise approves the unlawful methods used by its subsidiaries on the Philips systems it acquires in these transactions." *Id.* According to Philips, "Probo modifies and/or purchases and sells the modified systems for a significant profit with full awareness of this unlawful conduct." *Id.* at 53.

Consistent with this "pattern and practice" claim, Philips also makes certain allegations concerning Probo's purported role in the sourcing and sale of the two KDMC machines. *Id.* It claims that "Probo knowingly sold Philips ultrasound systems, which contained unlicensed Philips software that it acquired from [KPI Healthcare Inc. ('KPI')] . . . to Radon aware that options identified in its quotation

---

[2] By stipulation of the parties, Defendants Radon and Ultrasound Online were dismissed from this case pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure on September 21, 2022, and November 22, 2022, respectively. *See* [ECF Nos. 104, 123].

were unlicensed and enabled without authorization from Philips." *Id.* "*Consistent with its pattern and practice of purchasing and selling modified systems*, Probo presumably profited from the sale of the King's Daughters systems, which contained valuable unlicensed options." *Id.* (emphasis added).

      *iv.*   *Probo's Answer*

On December 6, 2021, the Ice Miller Attorneys entered a *pro hac vice* appearance on behalf of Probo and designated attorneys Niall A. Paul and Clifford F. Kinney, Jr., of Spilman Thomas & Battle, PLLC, as local counsel pursuant to Rule 83.6 of the court's Local Rules of Civil Procedure. *See* [ECF Nos. 44, 45]. A week later, on December 13, 2021, Probo timely filed its Answer to the Amended Complaint. [ECF No. 46]. In it, Probo denied all but three allegations: (1) that it is a medical devise equipment sales and servicing company, *id.* ¶ 5; (2) that it is a Delaware limited liability company with a principal place of business in Fishers Indiana, *id.* ¶ 17; and (3) that this court has subject-matter jurisdiction over this matter, *id.* ¶ 19. Probo also pleaded several affirmative and other defenses, including failure to state a claim upon which relief can be granted "with respect to some or all of the claims in the Complaint." *Id.* at 35. However, Probo never moved for dismissal of the action or a court ruling on any of its claimed defenses.

**C.**   *Discovery Requests and Responses*

I will discuss each discovery request and associated response (or lack thereof) in more detail below.[3]

---

[3] At several points in its Objections, Probo argues that Philips' discovery responses were untimely or otherwise unresponsive. *See* [ECF No. 382]. However, Probo has not moved the Court for sanctions

i.    *ESI Protocol*

On January 26, 2022, Philips' counsel submitted via email to Probo's attorneys, including the Ice Miller Attorneys, a draft Joint Motion for Agreed Order Regarding Document Discovery (the "ESI protocol") and requested that they "advise" as to whether they consented to Philips e-signing and filing the document on their behalf. [ECF No. 146-2, at 2]. Almost a year later—on January 6, 2023—Ice Miller attorney McKeown ("McKeown") finally responded, indicating that Probo would provide its own draft ESI protocol for Philips' consideration by January 13, 2023. [ECF No. 146-1, at 5]. After a phone call with Probo's counsel that same day, Philips again emailed its draft protocol for consideration. [ECF No. 146-2, at 2].

On January 13, 2023—the date of Probo's self-imposed ESI protocol deadline—McKeown emailed Philips' counsel, stating that Probo "[would] need additional time next week to complete the proposed ESI protocol." [ECF No. 146-1, at 4]. However, it appears that even this estimate was too optimistic, because on March 29, 2023, Philips' counsel sent the Ice Miller Attorneys a letter, asking when Philips would receive Probo's proposed ESI protocol and search terms. [ECF No. 146-4, at 2]. On March 31, 2023, McKeown provided a partial list of proposed search terms to Philips' counsel and indicated that Probo would follow up with additional search terms at a later time. [ECF No. 146-5, at 5]. Counsel for Philips acknowledged the partial list on April 3, 2023, stating that they "look[ed] forward to receiving the 'additional search

---

against Philips for this alleged misconduct. Because the PF&R relates only to Philips' motions for contempt and sanctions for Probo's misconduct, the Court declines to delve into Probo's allegations against Philips, which are matters beyond the scope of the PF&R.

terms for other items' . . . , as well as [Probo's] comments to the ESI protocol that [Philips' attorney] sent along back on January 6." *Id.* at 4. Philips also provided some "additions and clarifications" to the proposed search terms that Probo had provided in its March 31 email. *Id.*

On April 18, 2023, Philips' counsel again reached out to McKeown to follow up on the ESI protocol, as counsel had not yet received any comments to their draft. [ECF No. 146-6, at 2]. McKeown responded on April 21, 2023, indicating that he planned to provide ESI protocol comments later that day. *Id.* at 3. However, the comments were not sent that day, or even that month, and it appears that the failure to do so was a deliberate choice. On May 10, 2023, in response to an email from Philips' counsel again requesting comments to the draft ESI protocol, McKeown claimed that Probo had "prioritized completing the review and production" of documents "but [would] revert on the ESI protocol as well." *Id.* at 2. No timeline for when those comments would be received was provided, and it appears that an ESI protocol was never ultimately completed. [ECF No. 226, at 14].

ii.   *Philips' Discovery Requests to Probo*

On January 27, 2022, Philips served on Probo its First Set of Interrogatories and First Set of Requests for Production. *See* [ECF Nos. 60, 61]. Probo timely responded to the first set of discovery requests on March 1, 2022. *See* [ECF Nos. 74, 75]. On February 28, 2022, Philips served on Probo its Second Set of Requests for Production, *see* [ECF No. 71], to which Probo responded on March 30, 2022, *see* [ECF No. 83]. However, as explained in more detail below, Probo objected to every single

11

discovery request and—without leave of the court—decided that all requests related to machines besides the KDMC machines were beyond the scope of discovery and opted not to provide substantive responses to those requests. *See* [ECF Nos. 91-4, 91-5].

### a.   First Set of Requests for Production

In its First Set of Requests for Production, Philips made a total of 137 requests, seeking, in part, documentation and/or communications related to (1) Probo's acquisition, purchase, or sale of any Philips systems [ECF No. 91-1, at 7]; (2) training information regarding the "ordering, sourcing, purchasing, servicing, maintaining, or repairing of any Philips system," *id.*; (3) "all quotations, purchase orders, receipts and invoices for transactions" involving Philips systems, *id.*; (4) features, functions, options, or software on Philips systems that Probo offers to clients, discussed enabling, or requested or otherwise caused to be installed, removed, enabled or disabled, *id.* at 8–9; (5) information related to Probo's "process of acquiring, sourcing, buying, [or] requesting" Philips systems, *id.* at 11; (6) financial reports and information, *id.* at 15–17; and (7) corporate information, *id.* at 15.[4] The request instructions specified that "[u]nless otherwise indicated, the time frame for [the] Document Requests shall be January 1, 2015[,] to the present." *Id.* at 7.

In its response, Probo made six general objections to the First Set of Requests for Production to the extent it argues that the requests: (1) called for "information protected from disclosure under the attorney-client privilege, the work product

---

[4] This list is far from exhaustive but shows a sampling of the information Philips sought in its request.

doctrine, the joint defense and/or common interest privilege, any other legally recognized privilege, immunity or exemption from discovery" or would otherwise require Probo to disclose "the mental impressions, conclusions, opinions, or legal theories of Probo or its attorneys" [ECF No. 91-4, ¶ 1]; (2) "assume[d] facts and event or include[d] characterizations that [were] assumed to be accurate, contain[ed] legal conclusions, or presume[d] legal duties or obligations," *id.* ¶ 2; (3) were "overly broad, unduly burdensome, beyond the scope of permissible discovery, particularly at this stage of the proceeding," and sought information that was "not relevant to the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence and [was] not proportional to the reasonable needs of the case," *id.* ¶ 3; (4) were unduly burdensome in that they sought documents that were already in Philips' custody or control, were not in Probo's custody or control, were not reasonably accessible to Probo, were "equally or more readily available from sources other than Probo," or were "obtainable from a more convenient, less burdensome or less expensive source," *id.* ¶ 4; (5) contained terms that were undefined or otherwise "defined in a vague, ambiguous, or unintelligible manner," *id.* ¶ 5; and/or (6) "purport[ed] to impose burdens or obligations inconsistent with the Federal Rules of Civil Procedure," *id.* ¶ 6.

Probo then objected to each of the 137 requests individually, claiming that each sought irrelevant information that was "not proportional to the needs of the case" and was also "overly broad, unduly burdensome, [and] not reasonably calculated to lead to the discovery of admissible evidence." *See id.* at 3–98. It repeatedly claimed that

"[t]he operative facts and claims alleged against Probo in Plaintiff's Amended Complaint are limited to the Two Ultrasound Machines that were sold to King's Daughters Medical Center" and chose not to substantively respond to any requests unrelated to those two machines. *Id.* Finally, rather than responding to each request related to the KDMC machines with an individualized identification of responsive documents relating to that request, Probo inserted the following blanket language: "Without waiving the foregoing objections, Probo produces responsive documents related to the Two Ultrasound Machines at issue in this action bates numbered PROBO0000001-PROBO0000600." *Id.* at 4–12, 15–16, 19, 21, 29, 31–32, 39–40, 43, 48. Ultimately, Probo produced documents for only twenty-three (23) of the 137 total requests for production in Philips' First Set of Requests for Production and failed to specify what each document was, or to which request it correlated. Further, according to Philips, most of the 600 documents produced by Probo on March 1, 2022, were duplicates. [ECF No. 91-7, at 3].

### b.   First Set of Interrogatories

Philips' First Set of Interrogatories to Probo contained sixteen (16) interrogatories, seeking, in part, information related to (1) Probo's purchases and/or sales of Philips systems to and/or from its Co-Defendants and certain third parties; (2) client-requested modifications of features, tools, options, etc. on Philips systems; (3) intake or processing steps Probo performs when purchasing or reselling Philips systems; (4) methods Probo employs in using, repairing, or servicing Philips systems; and (5) details of Philips machines serviced by Probo. [ECF No. 91-2, at 7–13]. It also

14

requested certain employee information, as well as login information used for accessing Probo systems and software. *Id.*

In its response, Probo again made the same six general objections as seen in its response to the production request. [ECF No. 91-5, ¶¶ 1–6]. Also as seen in its response to Philips' production requests, Probo objected to each of the sixteen (16) interrogatories individually, claiming that the information sought was irrelevant, not proportional to the needs of the case, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 3–20. It further objected to all but two interrogatories on the grounds that each interrogatory consisted of "multiple, discrete subparts" and that collectively, the set of interrogatories exceeded the number of interrogatories allowed by Rule 33 of the Federal Rules of Civil Procedure. *Id.* Finally, rather than providing any substantive responses to any of the interrogatories that it chose to answer, Probo, again, issued a blanket statement, this time essentially telling Philips to dig out the responsive information itself:

> Without waiving the foregoing objections, Probo states that, with respect to the Two Ultrasound Machines at issue in this case, the answer to this Interrogatory may be determined by examining the documents being produced at Bates range PROBO0000001 – PROBO0000600, and the burden for ascertaining the answer will be substantially the same for either party.

*Id.* at 4–6, 10, 12. Again, Probo failed to provide a single substantive response with specific information responsive to an interrogatory or even pointing Philips to a particular document where the information for a particular request could be located.

15

c.   Philips' Second Set of Requests for Production

After learning of Probo's announced acquisition by Avista Capital Partners, LLC ("Avista"), Philips served on Probo its Second Set of Requests for Production related to that acquisition on February 28, 2022, which contained only five (5) requests. [ECF No. 91, ¶ 7]; *see* [ECF No. 71]. All five requests were related to the acquisition deal between Probo and Avista. [ECF No. 91-3, at 5–6].

In its response on March 30, 2022, Probo yet again generally objected on the same six grounds seen in its response to Philips' first request for production. *Id.* at 1–3. And it also objected to each individual request on the grounds that the information sought was irrelevant, not proportional to the needs of the case, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, or otherwise protected by the attorney-client privilege, the work product doctrine, the joint defense and/or common interest privilege, or some other privilege or immunity. *Id.* at 3–6. Once again, Probo failed to provide any substantive responses to Philips' requests.

**D.   *Dispute as to the Scope of Discovery***

After Probo responded to Philips' first set of discovery requests on March 1, 2022, the parties began communicating to identify and negotiate their disputes regarding Philips' requests and Probo's responses.

i.   *Notice of Probo's Deficient Discovery Responses*

On March 8, 2022—one week after receiving Probo's initial responses to the first set of discovery requests—Philips' counsel sent a deficiency letter to Probo's

attorneys. [ECF No. 91-7]. In the letter, Philips argued that Probo "improperly object[ed]" to "each document request and interrogatory" based upon "Probo's overly-restrictive view of the scope of discovery"—i.e., that discovery should be limited only to information related to the two KDMC machines. *Id.* at 2. Philips then provided language from the Amended Complaint specifically related to its pattern and practice claim to illustrate why Probo's attempt to limit the scope of discovery was improper. *Id.* at 2–3. Additionally, Philips took issue with Probo's document production, stating that "Probo's document production [was] woefully incomplete, spanning a mere 600 pages (most of which are duplicates)" and that Probo had "improperly restricted its document production to the two KDMC systems." *Id.* at 3.  Philips, therefore, asked Probo to "confirm that Probo [would] remove its improper objections, fully respond to the document requests and interrogatories, and produce all responsive documents and information." *Id.*

Ice Miller Attorney Arceneaux ("Arceneaux") responded to the deficiency letter on Probo's behalf on March 16, 2022, disagreeing with Philips' assertions that it had improperly restricted the scope of discovery. [ECF No. 91-8]. Specifically, in this letter, Probo claimed that "the wholly speculative nature of [the pattern and practice] allegations [was] insufficient to broaden the scope of [the] dispute, and the corresponding scope of discovery, beyond the KDMC Systems." *Id.* at 2. Probo further characterized Philips' pattern and practice claims as "consist[ing] entirely of vague, conclusory, and speculative allegations regarding Probo's business practices . . . untethered to any specific factual material that might render them plausible." *Id.*

According to Probo, these "wholly speculative allegations . . . [fell] well short of [Philips'] obligation under *Twombly* and *Iqbal* to plead 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 3 (citations omitted). Therefore, Probo argued, Philips' first set of discovery requests was a "wholesale fishing expedition" containing "overly broad" requests that "would impose substantial burdens on Probo that [were] wholly disproportional to the needs of the case." *Id.* As such, it declined to supplement its discovery responses as requested.

Philips replied to Probo's letter on March 25, 2022, arguing that "Probo's reliance on the pleading standard to avoid its discovery obligations [was] misplaced and telling" and pointing out that "if Probo wished to address the sufficiency of the allegations in the First Amended Complaint (FAC), it should have timely moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6)." [ECF 91-9, at 2]. It also reminded Probo that the "discovery standard is broader than the pleading standard under *Twombly* and *Iqbal*." *Id.*; *see* Fed. R. Civ. P. 26(b)(1) (stating that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and clarifying that the information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"). Further, Philips disagreed with Probo's characterization of its pattern and practice claims as "wholly speculative" and its discovery requests as either "wildly overbroad" or "disproportional to the needs of the case." [ECF No. 91-9, at 3]. Philips, again, requested that Probo comply with its

discovery obligations and remove "improper objections, fully respond to the document requests and interrogatories, and produce responsive documents and information" or otherwise arrange with Philips' counsel to meet and confer on the matter. *Id.*

> ii. *Parties' Attempts to Meet-and-Confer*

According to an April 13, 2022, email from Philips' counsel, the parties met and conferred "regarding Probo's responses to Philips' first and second sets of discovery" on April 12, 2022. [ECF No. 91-10, at 2]. The parties agreed at this time that Probo would address and respond to the following unresolved discovery disputes by April 19, 2022:

1. Whether Probo intend[ed] on maintaining its overarching obligation to all requests, limiting its responses and document production to the two devices provided to KDMC;
2. Whether Probo's document production related to the KDMC devices (PROBO0000001 – PROBO0000600) [was] complete, or if additional documents [would be] forthcoming;
3. Whether Probo [would] amend its responses, where applicable, to indicate that Probo [was] not in possession, custody or control of responsive information, so that the parties [could] discern the scope of their disputes;
4. Whether Probo [would] produce un-redacted documents from other proceedings in response to Request No. 50; and
5. Whether Probo and Varsity [would] stand on their objections to Philips' second set of document requests to Probo and/or its requests to Varsity, respectively, related to the Probo-Avista-Varsity transaction.

*Id.*

On April 19, 2022, McKeown responded to Philips on Probo's behalf. *See* [ECF No. 91-11]. In that email, Probo answered each of Philips' inquiries in turn as follows:

1. Probo intends to maintain its overarching objection to Philips' discovery requests, and plans to limit its responses and document production to the two devices provided to KDMC;

2. Probo is in the process of confirming that its document production related to the KDMC devices is complete, and if there are any additional documents related to those devices, Probo will promptly produce them;

3. Probo does not intend to amend its responses;

4. Probo does not intend to produce un-redacted documents from other proceedings in response to Request No. 50; and

5. Probo and Varsity intend to stand on their objections with respect to the requests referenced in [Philips'] item 5 . . .

*Id.* at 2. Probo further stated that it "believe[d] that this [response] complete[d] the meet-and-confer process" and indicated that it planned to file a motion for protective order "to limit the scope of Philips' discovery requests to the two devices provided to KDMC." *Id.* Ultimately, beyond assuring Philips that it would confirm that it had no more documents responsive to Philips' production requests related to the KDMC machines, Probo refused to amend or supplement its discovery responses and instead decided to involve the court in the dispute.

### E.    *Court Intervention*

The court has been asked numerous times by the parties to intervene in their discovery dispute. Each instance of a party's request for intervention relevant to the PF&R and the court's action in response is detailed below.

#### i.    *Protective Order*

##### a.    Probo's Motion for Protective Order

On April 19, 2022—almost ninety (90) days after it received Philips' initial discovery requests—Probo filed with the court its Motion for Protective Order, [ECF No. 85], seeking to limit the scope of Philips' discovery requests to information related to the two KDMC machines. Probo made two primary arguments in its motion.

First, it argued that "Probo's limited role with respect to the [KDMC machines] [did] not support the wide ranging and costly discovery sought by Philips." [ECF No. 86, at 8]. It based this argument on communications between the parties that occurred prior to Probo being added as a Defendant to this suit, wherein Probo claimed that it "never even took possession" of the machines or otherwise "received, touched, inspected, or handled" them "in any fashion." *Id.* at 9 (internal quotations omitted). This limited role, Probo claimed, "[did] not justify the costly and far-reaching discovery [ ] sought by Philips, which [was] far beyond the scope of those machines." *Id.*

Next, Probo argued that Philips' pattern and practice allegations in the Amended Complaint were "speculative" and, therefore, "insufficient to broaden the scope of discovery beyond the [KDMC machines]." *Id.* at 10. Probo again characterized Philips' discovery requests as a "wholesale fishing expedition" that were "wide-ranging" and would be "enormously costly" to answer. *Id.* at 10–11. It stressed to the court that Philips' requests for information related to *any Philips machine* were too broad, and it also took issue with the "more than seven year[]" time period for which responsive documents were requested. *Id.* at 5, 10 (emphasis in original). It ultimately asked the court to limit the scope of Philips' requests to only encompass information related to the KDMC machines. *Id.* at 12.

b.   Philips' Response in Opposition

On May 3, 2022, Philips timely filed its Response in Opposition, [ECF No. 90], asserting that Probo "deliberately misconstrued [the] amended complaint as limited

21

to the two [KDMC machines], seeking to avoid its discovery obligations," *id.* at 2. In its response, Philips made two primary arguments.

First, Philips argued that Probo failed—and, in fact, did not even *try*—to meet its high burden to establish good cause for entry of a protective order based on Probo's allegation that Philips' discovery requests sought irrelevant information. *Id.* at 8. Specifically, Philips claimed that "Probo's purported 'limited role' regarding the KDMC machines—if true—[did] not excuse its failure to produce the requested pattern and practice discovery," because "the Federal Rules allow broad discovery of any relevant matter, including to confirm reasonably [pleaded] beliefs, such as those [ ] regarding Probo's unlawful business practices." *Id.* at 8–9. It argued that "with knowledge of the improper modifications involving the [KDMC machines], and the modifications of other Philips' machines sold or purchased by the companies Probo acquired, Philips [was] entitled to the discovery it [sought] regarding Probo's broader business activities involving other Philips' systems." *Id.* at 9–10. Philips also attacked Probo's "attempts to bolster its 'because I said so' argument for limiting discovery" through application of the *Twombly* and *Iqbal* pleading standard. *Id.* at 11. In addition to pointing out that Rule 26 of the Federal Rules of Civil Procedure—not *Twombly* and *Iqbal*—outlines the applicable standard for discovery, Philips also highlighted that Probo failed to cite "a *single case* supporting its contention that unchallenged purported pleading deficiencies are a basis to refuse to produce relevant discovery." *Id.* at 11–12 (emphasis in original).

Second, Philips argued that Probo failed to satisfy its burden to establish that Philips' discovery requests were unduly burdensome, because it submitted no evidence in support of its claim as has been repeatedly required by this court. *Id.* at 14–15; *see Constellium Rolled Prods. Ravenswood, LLC v. Rogers*, No. 2:15-cv-13438, 2016 WL 10789402, at *2 (S.D. W. Va. Oct. 31, 2016) ("The party opposing discovery has the obligation to submit evidence supporting its claims that the requests are unduly burdensome, oppressive, or improperly invasive."); *Tinsley v. OneWest Bank, FSB*, No. 3:13-cv-23241, 2014 WL 7005852, at *3 (S.D. W. Va. Dec. 10, 2014) (collecting cases holding that parties opposing discovery on undue burden grounds must "submit[] affidavits or other evidence revealing the nature of the burden"; "must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection"; and "claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome").

Based on Probo's alleged failure to establish "good cause" for entry of the protective order limiting Philips' discovery as requested, Philips requested that the court deny Probo's motion and grant Philips' concurrently filed Motion to Compel, discussed in subsection (ii)(a) below. [ECF No. 90, at 17].

c.   Probo's Reply

On May 17, 2022, Probo filed a Reply to Philips' Response in Opposition. [ECF No. 99]. In it, Probo makes substantially the same arguments as in its motion related to proportionality, *id.* at 2–6, the speculative nature of Philips' pattern and practice

claims, *id.* at 6–7, and the lack of basis for the production of acquisition discovery, *id.* at 7–10. In sum, Probo argues that "Philips' discovery requests are grossly disproportional to the needs of this case and therefore beyond the scope of discoverable information under Rule 26(b)(1)." *Id.* at 10.

### ii.   *Compelling Compliance with Discovery*

#### a.   Philips' Motion to Compel

Concurrently with its Response in Opposition to Probo's Motion for Protective Order, Philips filed its Motion to Compel, [ECF No. 91], on May 3, 2022, seeking an order compelling Probo "to fully respond to Philips' discovery requests related to Philips' claims in this lawsuit that Probo [ ] engaged in broader unlawful business practices by buying and selling improperly modified Philips' systems beyond the two [KDMC machines]," *id.* at 1. In it, Philips made many of the same substantive arguments that it made in its Response in Opposition, namely that: (1) the allegations in the Amended Complaint were not limited to the KDMC machines, [ECF No. 92, at 1, 5]; (2) the broad discovery standard of Rule 26 allowed the requested discovery because "information regarding Probo's pattern and practice of profiting from procuring and selling adulterated Philips systems" is the "general subject matter" of this case, *id.* at 2; (3) Probo could not justify its refusal to produce the pattern and practice discovery, *id.* at 12; (4) Probo's reliance on the *Twombly* and *Iqbal* pleading standard was "misplaced," *id.* at 14; (5) the acquisition discovery was "directly relevant" to the issue of damages, *id.* at 16; and (6) Probo failed to meet its burden to establish that Philips' discovery requests were unduly burdensome, *id.* at 17–18. It,

therefore, asked the court to compel Probo to provide complete responses to all of Philips' discovery requests. *Id.* at 20. Additionally, Philips argues that Probo "apparently [ ] refused to produce information related to the [KDMC machines]," and although it was unclear to Philips what exactly was being withheld, it asked the court to compel Probo to amend its responses so that Philips could ascertain whether all responsive documentation had been produced. *Id.* at 19. Finally, Philips outlined Probo's refusal to produce unredacted versions of documents provided in response to requests related to the KPI litigation and asked the court to compel Probo to produce unredacted versions of those documents. *Id.* at 19–20.

### b.  Probo's Response in Opposition

On May 17, 2022, Probo filed its Response in Opposition to Philips' motion. [ECF No. 98]. Aside from the addition of an argument related specifically to the KPI litigation redactions, Probo's Response is almost word-for-word identical to its Reply in relation to its Motion for Protective Order, [ECF No. 99], save minor changes. As such, I will not outline each of Probo's arguments again here.

As to the KPI redactions, Probo argued that "[t]here [was] no basis to require Probo to produce unredacted copies of documents obtained by Philips in the prior KPI litigation" because Probo was not a party to that litigation and "if Philips had a problem with Probo's response to Philips' non-party requests, the proper forum to address those issues was in the Central District of California, where the KPI civil action was pending." [ECF No. 98, at 13]. Probo, therefore, asked the court to deny Philips' motion. *Id.* at 2, 14.

c.   Philips' Reply

On May 27, 2022, Philips filed its reply to Probo's response. [ECF No. 100]. It again argued that Probo misstated the applicable standard for discoverable information, failed to show how the discovery requests posed an undue burden, failed to show that either the pattern and practice or acquisition discovery was irrelevant, and failed to provide sufficient justification for its refusal to produce unredacted documents from the KPI litigation. *Id.* Philips also highlights how Probo's failure to respond to Philips' request that the court require Probo to amend its responses to indicate whether it had responsive documents in its possession, custody, or control. *Id.* at 10. Philips stated that "Probo's failure to do so [was] telling." *Id.*

iii.   *Hearing on Cross-Motions for Protective Order and to Compel*

On November 15, 2022, Magistrate Judge Tinsley held a hearing on the two pending cross-motions—Probo's Motion for Protective Order and Philips' Motion to Compel. *See* [ECF No. 139]. After hearing oral arguments on the issues raised in both motions, the court instructed the parties to "come to some compromise on some of [the] issues and advise the [c]ourt" via the filing of a joint statement by December 1, 2022. *Id.* at 64. If the parties could not come to an agreement about its discovery disputes within that time, the court indicated it would then issue an order on the pending motions. *Id.*

Pursuant to the court's instruction at the hearing, the parties filed a Joint Status Report Regarding Discovery Dispute on December 1, 2022. [ECF No. 125]. In it, the parties reported that they "met and conferred telephonically . . . and discussed

26

a proposal for resolving [the] discovery dispute and/or narrowing [their] areas of disagreement." *Id.* ¶ 5. However, the parties also stated that resolving the dispute would take additional time and asked the court for an additional week, "to and including December 8, 2022," to submit a final report on their negotiations. *Id.* ¶¶ 6–7. On December 8, 2022, the parties filed their final Joint Status Report Regarding Discovery Dispute. [ECF No. 126]. In it, the parties reported that despite "exchang[ing] written proposals and counterproposals" in an attempt to resolve or narrow the dispute, the parties had failed to reach an agreement. *Id.* ¶ 7.

### iv.   *Order Entered December 19, 2022*

Because the parties failed to reach an agreement regarding the discovery dispute, the court issued an Order on December 19, 2022, (the "December 2022 Order")—referred to by the parties as the "Discovery Order"—granting in part and denying in part each of the cross-motions. [ECF No. 130]. In it, the court found that "[t]he extent of Probo's involvement in the sale of the two modified [KDMC machines] is a core issue of fact in this case" and that "[a] mere post-suit letter from Probo's counsel disclaiming Probo's role, without more, [was] not dispositive of [that] issue of fact." *Id.* at 7–8. Because "Probo [had] wholly failed to set forth any authority to the contrary," the court ruled that Philips' requests related to the KDMC machines were "centrally relevant." *Id.* at 8. The court also held that "Philips' inquiry beyond the scope of the two KDMC machines into Probo's sale of other Philips ultrasound machines [was] likewise central to the allegations in the Complaint" because "Philips's Amended Complaint expressly alleges that Probo's alleged involvement in

modifying the KDMC machines [was] part of a larger 'pattern and practice.'" *Id.* As such, the court stated that "the relevance of the discovery sought [was] not merely speculative." *Id.*

Moreover, the court found that "Philips's discovery requests *for the most part* appear[ed] to be fairly specific, proportional, and narrowly[ ] tailored to relevant facts." *Id.* at 8–9 (emphasis added). However, the court found that the "extensive seven-year time period" at issue was unsupported by "a sound logical basis" and that Philips' request for information related to *any* Philips machine was "relatively undirected in contrast to Philips's more focused requests that were tethered to specific machines and transactions." *Id.* at 9 (emphasis in original). Therefore, the court limited Probo's supplemental responses to the time period between May 17, 2017, through the date the suit was filed and further limited the scope of the responses to only ultrasound machines, including *but not limited to* the KDMC machines. *Id.* at 10. Additionally, the court modified Philips' discovery requests "to reflect the express offers of compromise made by Philips in its November 29, 2022, and December 7, 2022[,] emails." *Id.* The court ordered Probo to serve supplemental responses to Philips's discovery requests in accordance with its findings no later than January 18, 2023. *Id.*

    *v.*   *Motions to Modify Schedule and for Status Conference*

    a.   <u>Motion to Modify Schedule</u>

At the time the December 2022 Order was entered, the Scheduling Order for the case had already been modified—at the request of the parties due to the ongoing

discovery dispute—on three occasions, and the Third Amended Scheduling order was then in effect. *See* [ECF No. 103]. On February 1, 2023, the parties jointly moved to modify the schedule yet again to extend "the majority of is deadlines by approximately five months." [ECF No. 132, at 1]. According to the parties, since the December 2022 Order, they had "discussed discovery responses and protocol" and "communicated regarding [Probo's] progress in complying with [the Order]." *Id.* at 8.[5] In accordance with those communications, Probo was to "provide supplemental written discovery responses, as well as an initial supplemental production by February 1, 2023." *Id.* However, Probo had since "advised" Philips that "it would need approximately 90 days to complete a rolling production." *Id.* at 9. The court granted this motion on February 2, 2023, [ECF No. 136], extending the deadlines as requested. Under the Fourth Amended Scheduling Order, the close of discovery was to be September 28, 2023. *Id.* at 1.

On June 30, 2023, the parties again jointly moved the court to modify the Scheduling order, this time extending deadlines by "approximately three months to allow Probo to complete its ongoing production of documents to comply with Magistrate Judge Tinsley's December 19, 2022[,] order sufficiently in advance of the date for expert reports and disclosures." [ECF No. 142, at 1]. In it, the parties claim that the prior schedule the parties had proposed "was based on Probo's initial estimation at the time that it could complete its rolling document production within approximately 90 days" but that Probo would actually need "until approximately

---

[5] Footnotes herein refer to the ECF page number.

September 15, 2023[,] to complete its production." *Id.* at 6–7. The court denied this motion on July 6, 2023, "[b]ecause the parties [could not] explain the repeated delays plaguing this case or demonstrate compliance with the thrice-modified schedule."[6] [ECF No. 143, at 1]. At this point, "[t]wo things remain[ed] unclear to [the] court: (1) why Defendant Probo failed to produce the documents within its own 90-day deadline; and (2) why Defendant Probo needs more than 7 months to review documents, in its possession, which were originally requested in January 2022." *Id.* at 3.

b.   Motion for Status Conference

On July 10, 2023, in response to the court's order denying modification of the case schedule, Probo moved for a status conference, claiming that it "wish[ed] to address more fully its efforts to comply" with the December 2022 Order, as well as the status of the rolling production. [ECF No. 144, at 1]. In the motion, "Probo's counsel acknowledge[d] that, in retrospect, its previous estimate of 90 days to complete its rolling production was overly optimistic and significantly off the mark." *Id.* It also outlined its production efforts up to July 10, 2023, noting that it had "produced more than 16,000 responsive documents, totaling nearly 35,000 pages, across ten separate rolling document productions" but "[had] further significant work to perform to complete its rolling productions under the [December 2022 Order]." *Id.* at 4–5. Probo estimated that the total document production would be "in excess of 100,000 documents," though "the total volume of additional potentially responsive

---

[6] At the time of the July 6 Order, the Scheduling order had actually been modified a total of four times.

documents [was] not yet known with specificity." *Id.* at 5. The court denied this motion on July 11, 2023. [ECF No. 145].

> vi.  *Philips' Motion to Compel Compliance with Discovery Order and for Sanctions*

On July 10, 2023, following the court's denial of the parties' motion to amend the Scheduling order for a fifth time, Philips filed a Motion to Compel Compliance with Discovery Order and for Sanctions. [ECF No. 146]. In it, Philips asks the court to compel Probo to complete its document production by July 21, 2023. *Id.* at 1. The exhibits to that motion paint a thorough picture of Probo's continual delays in responding to production requests for a six-month period from January 2023 through July 2023. I will discuss each exhibit and the corresponding delay in turn.

> a.  Evidence of Probo's Continual Delays

First, on January 6, 2023, in response to the court's December 2022 Order, the parties emailed regarding Probo's supplemental discovery responses and accompanying ESI protocol, including the two-week extension that Philips gave Probo "to serve its supplemental written discovery responses." [ECF No. 146-1, at 5]. The parties also identify "low-hanging fruit"—i.e., Salesforce data, unredacted KPI production, and additional KDMC machine documents—to be expedited. *Id.* A week later, on January 13, 2023, McKeown emailed Philips' counsel, stating that Probo's attorneys met with Probo that week to "facilitate the production of information from [Probo's] Salesforce database." *Id.* at 4. Probo estimated that report would be ready "by the week of February 1." *Id.* Additionally, McKeown states that counsel met with Probo's IT services provider that week "to discuss searching both email accounts and

31

company document repositories for information" and that they were "in the process of formulating proposed search terms" for Philips' review and consideration. *Id.* In response, Philips asks on January 13, 2023, for a "[ballpark]" completion date of Probo's production responses. *Id.* Five days later, McKeown responds that "because [they] [didn't] yet know the approximate number of documents to be reviewed and/or produced, it [was] difficult to provide a ballpark completion date for Probo's production." *Id.* at 3. He "expect[ed] to have more information that [would] allow for a more informed estimate by *early*" the following week. *Id.* (emphasis added). Philips' counsel asked for an update on January 24, 2023, to which McKeown replied that they still "[didn't] yet have a firm grasp on total document volume" but estimated it would take approximately ninety (90) days to complete document production. *Id.* at 2.

Then, on February 9, 2023, Probo made its first supplemental document production, consisting of "an Excel file containing data from Probo's Salesforce database." [ECF No. 142-3, at 2]. As evidenced by a letter from Philips' counsel to the Ice Miller Attorneys dated March 29, 2023, Probo then failed to produce proposed search terms for electronic discovery or any additional documentation after its initial supplemental production of February 9. [ECF No. 146-4, at 2]. Additionally, the information provided by Probo in that first supplemental production was "incomplete," as the Excel sheet was missing pertinent information that should have been included. *Id.*

In response to this letter, McKeown sent a partial list of proposed search terms to counsel for Philips on March 31, 2023, and stated that Probo would be "following up with additional search terms for other items as well." [ECF No. 146-5, at 5]. Philips' counsel responded with additions and clarifications to the proposed search terms on April 3, 2023, at which time counsel also said they "look[ed] forward" to receiving the additional search terms and Probo's "non-search-term-related document production, including the unredacted KPI production, POs/invoices derived from the Salesforce data . . . , and other responsive documents" that Probo had indicated would be "completed by the end of April." *Id.* at 4. On April 14, 2023, Probo made a supplemental production with the unredacted KPI litigation documents. [ECF No. 146-6, at 3–4]. It, notably, did not dispute the estimated completion date Philips had mentioned.

On April 21, 2023, McKeown emailed Philips' counsel with document counts for each set of search terms in Philips' April 3 email, for a total document count of 22,542. [ECF No. 146-5, at 3]. He indicated that Probo expected to make a document production the following week "consisting of responsive documents from these results," as well as another supplemental document production with company financials later that same day. *Id.* Probo then produced 1,931 documents on May 4, 2023, which consisted of "a subset of responsive documents" from the 22,542 documents in the search term document count. *Id.* at 2. When Philips' counsel inquired as to the *remainder* of the 22,542 documents on May 10, 2023, McKeown responded that "not all of the 22,542 documents [were] responsive" and that they

would "make another document production from the overall set of 22,542 documents *within the next few days*, as [their] document review team [had] nearly completed its review of those documents." *Id.* (emphasis added). Philips later claimed that this statement "led Philips to believe that [Probo's] compliance with the [c]ourt's [December 2022 Order] was . . . imminent and nearly complete." [ECF No. 154, at 8].

The next supplemental document production from Probo came on May 30, 2023, and was followed by an additional supplemental production on June 2, 2023. [ECF No. 146-7, at 4]. A total of was 5,821 documents were produced in these two supplemental productions. *Id.* at 5. McKeown indicated that Probo anticipated making an additional production the week of June 6, 2023. *Id.* Counsel for Philips asked McKeown whether this production would complete Probo's supplemental production, and McKeown answered in the negative but did not otherwise indicate when the production supplementation would, in fact, be complete. *Id.*

On June 21, 2023, counsel for Philips emailed McKeown regarding the need to amend the Scheduling order because Probo's "pace of production [had] made the [then-current] schedule unworkable." *Id.* at 3. In response, McKeown agreed that an extension was necessary and estimated that the "substantial completion date" for Probo's supplemental productions would be August 31, 2023—almost four months after its initial estimate *and* over one month *after* Philips' expert reports were due. *Id.* at 2; *see* [ECF No. 136]. Following this conversation, Philips prepared and forwarded for Probo's review a proposed amended schedule extending case deadlines and listing Probo's anticipated production completion date as August 31, 2023. [ECF

No. 154, at 10]. However, when Probo returned the draft with edits, it had extended the production completion date to September 30, 2023, and "extended the case schedule out by an additional four to five months." *Id.* at 11. The parties ultimately compromised and proposed a completion date of September 15, 2023. *Id.* at 12.

On June 27, 2023, the parties filed this joint motion seeking to modify the Scheduling order for a fifth time, [ECF No. 142], which, as discussed above, the court denied, [ECF No. 143]. After the court denied the parties' motion to amend the case schedule, Philips' counsel sent a letter to the Ice Miller Attorneys arguing that "Philips [was] significantly and unfairly prejudiced by Probo's failure to produce documents in accordance with Magistrate Judge Tinsley's December 19, 2022 Order" and stating that Philips had "relied to [its] detriment on Probo's continued assurances that it would be completing its production sufficiently in advance of the expert report deadline." [ECF No. 146-8, at 2]. It demanded that Probo complete its document production no later than July 13, 2023. *Id.* at 2–3. Probo responded via email the following day—July 7, 2023—indicating that it could not complete it document production by the demand date. [ECF No. 146-9, at 2]. In this email, Arceneaux stated that they had "underestimated the amount of time and resources, and volume of documents, that would be necessary to complete [the] production" and were "further expanding [their] document review team," *id.*, which to this point had consisted of eight attorneys, [ECF No. 144, at 4]. Arceneaux also indicated that Probo's tenth supplemental production, consisting of 4,114 documents, had been sent that day. [ECF No. 146-9, at 2].

As of July 14, 2023, Probo had produced a total of approximately 28,000 documents responsive to Philips' requests. [ECF No. 354, at 31].

        b.   <u>July 20, 2023, Hearing</u>

On July 20, 2023, Magistrate Judge Tinsley held a hearing on Philips' pending Motion to Compel Compliance with Discovery Order and for Sanctions. *See* [ECF Nos. 151, 154]. At the hearing, counsel for Philips informed the court that Probo had produced a total of approximately 28,000 documents since the December 2022 Order and that "[o]f those 28,000, Probo produced approximately 14,000 . . . on July 14th." *Id.* at 4. Although Philips was still in the process of reviewing the supplemental production, it indicated that it was "missing communications with respect to various custodians, documents and communications related to tools used to gain access to Philips's systems to enable options and any modification tools . . . discovery related to the acquisition of Probo . . . additional company financial information, [and] sales information regarding Philips's parts and accessories." *Id.* at 4–5, 16–17. In sum, Philips told the court that Probo was "very far behind on the document production." *Id.* at 5.

In explaining why it continued to let Probo supplement its production on a rolling basis beyond the date specified in the December 2022 Order or its agreement with Probo to complete production by the end of April 2023, Philips stated that they were "simply trying to be collaborative" and hadn't anticipated the process taking longer than the initial ninety-day estimate Probo had provided. *Id.* at 24. It further indicated that Probo's repeated assurances that additional supplemental responses

would be forthcoming led Philips to believe that Probo was actively working on complying with the December 2022 Order and would complete its production in a timely manner. *See id.* at 22–28. Based on Philips' unfair prejudice due to its reliance on Probo's statements regarding completion of its document production, Philips moved the court for attorneys' fees under Federal Rule of Civil Procedure 37(a)(5), as well as sanctions against Probo pursuant to Rule 37(b) for noncompliance with the court's December 2022 Order. *Id.* at 31.

When asked by the court what steps Probo had taken to comply with the December 2022 Order, Arceneaux stated that Probo had "immediately" reached out to Philips' counsel "to set up a meet-and-confer to discuss a protocol for discovery." *Id.* at 32. At that meet-and-confer, Probo stated that the parties "talked about the need to conduct a lot of searches and produce documents on a rolling basis," as well as what production to prioritize. *Id.* As a result, Probo produced a Salesforce database report on February 9, 2023, and between that date and July 14, 2023, Probo had "searched and gathered more than 100,000 documents, reviewed more than 80,000 documents for responsiveness, [and] produced 28,000 responsive documents . . . across [eleven] separate rolling productions." *Id.* at 33–34. Arceneaux conceded, however, that "[t]wo big categories" of documents had not yet been produced: (1) "communications and documents that are responsive to certain categories;" and (2) purchase orders and invoices on over 1,000 machines. *Id.* at 34–35. Arceneaux also told the court that he had just recently conferred with his "team" and their "outside discovery vendor, KLDiscovery"—who Probo employed only after the court denied the parties' joint

motion for a fifth amended ccheduling order on July 6th—and the earliest that Probo could complete production would be August 21, 2023. *Id.* at 35, 38–39.

In response to the court's inquiry as to why Probo had not gotten a solid deadline on document production earlier in the litigation, Arceneaux stated that Probo's rolling production deadline "[was] *not in or out* of the scheduling order"—i.e., the scheduling order was "silent" on the matter. *Id.* at 36 (emphasis added). And despite agreeing with the court that the December 2022 Order gave Probo a deadline of January 18, 2023, for production completion—a date Arceneaux felt was "unrealistic"—Arceneaux claimed that there was, as of July 20th, "no court-ordered deadline for the completion of Probo's production." *Id.* at 37. As such, Arceneaux argued that Probo had "not missed a court deadline" and did not intend to. *Id.* at 44.

Probo next outlined for the court "some of the steps" Probo had taken to "get [production] done quicker." *Id.* at 38. These "steps" included bringing on three additional partners to the case, hiring KLDiscovery to "expedite and automate . . . the review and production," and putting additional people on the team. *Id.* However, when the court asked *when* Probo began taking these steps to expedite production, Probo answered "[t]he day we received the order denying the joint motion to amend the scheduling order," which, at stated, occurred on July 6, 2023, only two weeks prior to the hearing date. *Id.*

Judge Tinsley, understandably, expressed concern at the hearing with how discovery had progressed, noting that there had been delays and non-compliance with the court's orders. *Id.* at 43–44. He told counsel that information relayed at the

hearing "should have been provided earlier" and counsel's decision not to do so "put[
] everybody in a difficult position." *Id.* at 56. Ultimately, he held the motion in
abeyance until he could confer with me.

### vii.    *July 2023 Order*

On July 21, 2023, the court entered an Order—referred to by the parties as the
"Sanctions Order"—granting in part and denying in part Philips' motion. [ECF No.
153]. In it, Judge Tinsley stated that "Probo's counsel was unable to provide specific
answers to [his] questions regarding the amount of documents awaiting review, what
that review entail[ed], or even delineate which of Philips's discovery responses had
been fully answered." *Id.* at 3. Judge Tinsley further stated that he found it alarming
that "Probo's counsel was not even able to confirm the completion of data collection
from his own client, hedging that the 'vast majority' [had] been received from Probo."
*Id.* Judge Tinsley also highlighted that "the record indicates that Probo did not put
real efforts and resources toward its production until July 6, 2023—despite having
represented to Philips in February . . . that its production would be complete 'in
approximately 90 days.'" *Id.* (citing [ECF No. 132]).

Ultimately, Judge Tinsley found that "Probo [had] egregiously failed to meet
its discovery obligations . . . in direct contravention of a [c]ourt Order." *Id.* at 5. He
also found that "as a result of Probo's litigation conduct, and in reliance on its
representations, Philips [had] been prejudiced in its ability to move its case toward
resolution." *Id.* at 6. As such, Judge Tinsley determined that sanctions against Probo
were appropriate but held the issue of what those sanctions would be in abeyance

pending Probo's completion of its discovery obligations. *Id.* Probo was ordered to (1) complete production by 5:00 p.m. EST on August 21, 2023; (2) accompany "any and all documents" produced—including documents already produced—by a written Supplemental Response, identifying "by specific Bates number the range of documents being produced, the discovery request or requests to which the documents correspond[ed], and a brief description of the documents being produced, in sufficient detail to permit Philips to identify them;" (3) provide to the court and Philips' counsel a Privilege Log for any documents withheld on the basis of privilege; and (4) submit *in camera* daily Status Reports that meet certain specified criteria by 4:00 p.m. EST each business day, beginning July 24, 2023. *Id.* at 7–8. Both parties were also ordered to submit periodic Joint Status Reports containing "a fulsome description of Probo's progress, including the number of documents Probo [had] produced along with the corresponding Bates numbers, and any issues that [had] arisen between the parties." *Id.* at 8. Finally, the Order formally notified Probo that failure to comply with the Order would result in a recommendation that "default judgment be entered against Probo and trial proceed on the issue of damages only." *Id.* at 9. On July 26 and 27 of 2023, attorneys from Ropes & Gray LLP appeared in this matter on behalf of Probo. *See* [ECF Nos. 156, 157, 158]. The Ice Miller Attorneys officially withdrew their appearance on October 4, 2023. *See* [ECF Nos. 241, 242].

*viii.*   *Renewed Motion for Sanctions*

a.   <u>Philips' Motion</u>

On September 26, 2023, Philips filed the instant renewed Motion for Sanctions, asking the court to render default judgment in favor of Philips for Probo's noncompliance with this Court's Orders. [ECF No. 225]. In its accompanying Memorandum of Law, [ECF No. 226], Philips claims that "Probo's violations of the [c]ourt's discovery order, its production of a crippling number of documents following the [c]ourt's July 21, 2023[,] Order, its other prejudicial litigation conduct and the resultant *extreme* prejudice to Philips" constitutes "a textbook example of an abuse of the judicial system warranting these sanctions," *id.* at 1 (emphasis in original).

First, Philips argues that since July 28, 2023, Probo had produced a total of 121,365 documents consisting of 661,101 pages—"nearly 12 times its prior production and 92% of its entire production" in this case. *Id.* at 9. This "massive document dump" forced Philips to "enlist 21 additional documents reviewers (13 e-discovery attorneys and 8 temporary project attorneys) . . . at a significant expense." *Id.* at 10. Philips claims it was "extremely prejudiced in its ability to not only review, but *digest*, Probo's massive production for purposes of its supplement expert reports and depositions, which necessarily [had] been crammed into the last week and a half of discovery." *Id.* at 10 (emphasis in original). Philips also states that the timing and size of Probo's production allowed "simply no room for follow up discovery to address witnesses' testimony or deficiencies in Probo's production." *Id.* Further, Philips argues, and I

41

agree, that "[t]he sheer volume of Probo's production speaks volumes about its abject failure to comply" with this court's December 2022 Order. *Id.* at 10–11.

Next, Philips claims that Probo failed to preserve relevant documents or fully comply with the December 2023 Order. *Id.* at 11. Specifically, Philips points to Probo's statements to the court related to the two KDMC machines that it had "no knowledge of any modifications to, or unlicensed applications on, either machine." *Id.* (citing [ECF No. 86, at 9]). According to Philips, "[t]hese statements were *demonstrably false*," as shown by the sworn affidavit of Matt Guisinger, the principal of Ultrasound Online, in which "Mr. Guisinger stated, *with documentary support*, that contrary to Probo's representations, *Probo was heavily involved in—indeed directed—the enablement of unlicensed options in the [t]wo KDMC machines.*" *Id.* at 11–12 (emphasis in original). Mr. Guisinger "specifically identified the roles of Mike Dilick (Probo's Chief Sales Officer), and Probo's current or former employees, José Valdez and Jace Gentil, in the preparation of the [t]wo KDMC machines for delivery to Radon, including the enablement of unlicensed options." *Id.* at 12 (citing [ECF No. 114]). As such, Philips argues that "Probo was required to search for and produce communications, including text messages" of those three individuals but failed to produce Mr. Dilick's and Mr. Gentil's texts with Mr. Guisinger. *Id.* Further, Philips claims that when it deposed Mr. Gentil on September 20, 2023, "Mr. Gentil testified that he only became aware of the lawsuit" a few months prior and "did not recall being asked to collect text messages" or search his personal email address for communications related to unlicensed file options despite using that email address in

obtaining those options. *Id.* at 12–13. Likewise, when Philips deposed Mr. Valdez on September 22, 2023, "Mr. Valdez testified that he only became aware that Philips had issued document requests to Probo while preparing for his deposition . . . the previous day." Additionally, he had no memory of a document hold being issued in the case and claimed he "was never asked to collect emails, texts, WhatsApp messages, chats or other forms of communication." Upon terminating his employment with Probo, Mr. Valdez kept his work phone, ultimately trading it in, but said he was never asked "to preserve any phone records or text messages" despite having "regularly texted with Mr. Guisinger." *Id.* at 13.

Additionally, Philips claims that Probo "compounded the prejudice to Philips" by serving "sweeping discovery, including for ESI" and by "asserting" after the July 2023 Order that "Philips' discovery responses and document production, *served in December 2022*, were somehow deficient." *Id.* at 14–15 (emphasis in original). Philips notes that it sought to enter an ESI protocol with Probo as early as January 2022, but that Probo failed to provide any follow-up on Philips' proposed draft, even after Philips sent a new copy and request for comments one year later in January 2023. *Id.* at 14. As to the alleged deficiencies in Philips' discovery responses, Philips argues that it fully complied with Probo's request, but that even if Probo did have issues with Philips' responses, it waived pursuance of those issues under Local Rule 37.1(C) by failing to file a motion to compel within thirty days of Philips' response. *Id.* at 15. Ultimately, Philips characterizes "Probo's attempts to 'both sides' its egregious violation" as "nothing but a smoke screen for its litigation tactics" and "bad faith and

gamesmanship" meant to "intentional[ly] compound[ ] . . . the unfair prejudice to Philips." *Id.*

Finally, Philips outlines the "unquestionable and extreme" prejudice it faced as a result of Probo's conduct, outlining several examples, and argues that default judgment against Probo is a warranted sanction in this case. *Id.* at 16–17. According to Philips, "[t]here could not be a stronger case requiring default judgment to serve the purpose of deterring the type of egregious litigation tactics in which Probo [had] engaged." *Id.* at 18. Less drastic sanctions, Philips claims, would not "suffice to alleviate the severe prejudice" it faced as a result of Probo's conduct. *Id.*

### b.   Probo's Response in Opposition

On October 10, 2023, Probo filed its Response in Opposition to Philips' motion. [ECF No. 247]. In addition to arguing that "there is no basis" to award Philips the default judgment it seeks, Probo claims that Philips' "overbroad claims of 'extreme prejudice' from a supposed 'crippling number of documents' being produced *in response to its own discovery demands* are not well founded." *Id.* at 1 (internal citation omitted) (emphasis in original). Probo further claims that "Probo is not now, nor was it at any point, acting with the intent to gain an unfair advantage by delaying productions or pursuing its own discovery," instead blaming the discovery delays on prior counsel's "lack of diligence" and "a misapprehension by both sides that there would be further adjustments to the schedule." *Id.* at 2. Indeed, Probo claims that it "has not only pursued this case in good faith, but . . . has gone above and beyond to ensure its obligations are met." *Id.* at 13. As such, it argues that any sanction ordered

by the court "should not be imposed against Probo," but rather against "counsel who directed the litigation and discovery prior to July 21, 2023,"—i.e., the Ice Miller Attorneys. *Id.* at 14.

Probo also vehemently denies any misconduct related to preservation of custodial data. First, it claims that Probo's duty to preserve data was not triggered until it received Philips' preservation demand on September 17, 2021, at which time it was "shared with relevant employees." *Id.* at 15. It further states that "numerous steps" were taken to "implement multiple back-end technical holds" on custodial data, which evidences its compliance with its preservation obligations. *Id.* at 17. Finally, Probo provides a number of excuses related to potentially missing data from certain custodians, ranging from accidental or automatic text deletions to a supposed lack of knowledge about an individual's involvement with the systems at issue.

       c.    <u>Philips' Reply</u>

On October 17, 2023, Philips filed its Reply. [ECF No. 253]. In it, Philips points out that this court had already ruled that sanctions were warranted in this case, a fact that Probo "entirely ignores" in its Response. *Id.* at 1. Rather, Philips argues, "Probo attempts to skirt the consequences for its *egregious* discovery conduct" by discounting Philips' prejudice, blaming its document "dump" on Philips, making "demonstrably false statements about Philips' discovery in an effort to 'both sides' the parties discovery conduct," and—in a last-ditch effort to avoid accepting any responsibility—blaming its former counsel. *Id.* (emphasis in original). Philips,

therefore, reiterates its arguments in favor of the court entering a default judgment against Probo for its misconduct.

### ix.    *January 4, 2024, Hearing on Renewed Motion*

On January 4, 2024, a hearing on Philips' Renewed Motion for Sanctions was held by Judge Tinsley, at which both parties appeared and argued their respective positions. *See* [ECF No. 354]. Because the arguments mirror those in their filings, I will not go into detail on those arguments here. At the conclusion of the hearing, Judge Tinsley reiterated his earlier finding that a court Order had been violated and informed the parties that he would be sending his proposed findings, as well as a recommended ruling, to me for consideration. *Id.* at 135–36.

### F.    *PF&R*

Judge Tinsley filed his PF&R on January 19, 2024, recommending that Philips' motions be granted, that the court enter a default judgment against Probo on all counts, and that this matter proceed to trial solely on the issue of damages. [ECF No. 369, at 1]. In it, Judge Tinsley finds that, prior to the July 2023 hearing on Philips' motion for sanctions, "Probo took no substantial action to comply with the [c]ourt's [December 2022] Order." *Id.* at 12. "Nor," he says, "did Probo file objections to the Order or otherwise seek relief prior to the [c]ourt's January 18, 2023 deadline." *Id.* Rather, "Probo immediately pressed Philips to agree to additional time for the defense to comply," and in so doing, "misrepresented the true status of its progress, telling [Philips] that it would need an extension of just '90 days' to complete its production

46

and comply with the [c]ourt's December 2022 Order" despite having no "good-faith factual basis for making this representation." *Id.* at 12–13.

> To be clear, the undersigned's recommendation of sanctions is not based upon a pedantic requirement that all parties before the [c]ourt must confine their representations with scientific exactitude; *nor was Probo's misrepresentation of the production status an isolated instance of an honest miscalculation*. Simply put, the extent of the miscalculation is far too vast; subsequent proceedings revealed that, as of the [c]ourt's January 18, 2023[,] deadline for Probo to complete its production, over 92% of Probo's ultimate production in this case remained virtually untouched. *Probo did not miscalculate—it completely abdicated its duty to participate in discovery in good faith, and concealed this information from Plaintiff, and from the [c]ourt.* Probo employed a strategy of delay at every turn, bolstered by its repeated misrepresentations regarding the status of its discovery compliance.

*Id.* at 13 (emphasis added). Because Judge Tinsley had already ruled in his July 2023 Order that sanctions were warranted and that Philips had been unduly prejudiced as a result of Probo's misconduct, the question the PF&R seeks to answer is the appropriate sanction for that misconduct.

The case of *Mey v. Phillips*, 71 F.4th 203 (4th Cir. 2023), as noted by Judge Tinsley, clarifies the Fourth Circuit's standard for imposing a default judgment sanction based upon a party's discovery abuses. While federal district courts are accorded "wide latitude in controlling discovery," which includes the imposition of sanctions for discovery abuses, a district court's discretionary range is "more narrow" when the sanction involved is default judgment. *Mey*, 71 F.4th at 217. To balance the competing interests of "the district court's desire to enforce its discovery orders" and "the party's right to a trial by jury and a fair day in court," district courts must consider four factors, known as the *Wilson* factors, in determining whether judgment

by default is an appropriate sanction in a particular case: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Id.* (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978)).

Applying these factors, Judge Tinsley finds that "the record is clear that [Probo's] pattern of misconduct in this civil action—its disruption, delay, subversion, and disregard for the time and resources of [Philips], this court, and the integrity of the judicial process—is *precisely* the type of 'wide[ ] scope of intentional discovery abuse'" that warrants the "utmost sanction." *Id.* at 24 (internal citation omitted). First, Judge Tinsley states that "[t]he record clearly documents bad-faith gamesmanship by Probo . . . and consequent severe prejudice to [Philips]." *Id.*

> While a single instance of such conduct is insufficient, Probo has displayed a consistent pattern of gamesmanship and bad faith— delaying the progress of this matter toward resolution, resisting the production of discoverable information, making vague and carefully-worded representations to mislead the [c]ourt and Plaintiff, making representations to the [c]ourt without having a factual basis to support those representations, and—most significant—its utter disregard for and subversion of the [c]ourt's discovery orders and case schedules.

*Id.* Judge Tinsley points to "Probo's utter and complete failure to prepare for an efficient and timely production in an ESI-heavy matter" despite having "adequate resources, legal representation, and business sophistication to enable its timely compliance" as evidence of its bad faith in this case. *Id.* at 25. For instance, although Probo had represented to Philips and the court that "its review process was nearly

complete" as of July 21, 2023, the record now shows that at that time, "Probo had completed only 8% of its total production." *Id.* Only after the court required daily reports and threatened default did Probo finally "complete[ ] its search for, and collection of, responsive information and the subsequent document-review process by defense counsel," turning over a whopping 121,365 documents. *Id.* Judge Tinsley states that the production of 92% of Probo's responsive documents after Philips' expert report deadline—and, again, only after a threat of default by the court— "clearly demonstrates that [Probo] sat on its hands [and] did not even attempt to comply with [this court's] operative scheduling orders or the . . . December 2022 Order until July 2023." *Id.*

Judge Tinsley then criticizes "Probo's attempt to paint its former counsel, Ice Miller, as the scapegoat for its misconduct." *Id.* at 26. As evidence of the lack of support for Probo's argument, Judge Tinsley points to Probo's statement at the January 4, 2024, hearing that "there is no prejudice" to Philips, referring to it as "a phantom," despite the court having already found prejudice to exist in its July 2023 Order. *Id.* (citing [ECF No. 354, at 70]); *see* [ECF No 153, at 6 ("[A]s a result of Probo's litigation conduct, and in reliance on its representations, Philips has been prejudiced in its ability to move its case toward resolution; namely, Philips has been hampered in its ability to take depositions and prepare its expert witnesses for trial.")]. And the prejudice to Philips was compounded, Judge Tinsley finds, when it had only weeks to "not only review, but *digest*, Probo's massive production for purposes of its supplemental expert reports and depositions . . . leaving no room for follow up

49

discovery to address witnesses' testimony or deficiencies in Probo's Production." *Id.*
at 28. "Based upon Probo's egregious misconduct and the obvious severe prejudice to
[Philips] as a result," Judge Tinsley finds that "the first two *Wilson* factors support
the imposition of the sanction of default judgment." *Id.*

Next, Judge Tinsley finds that "[t]he last two *Wilson* factors—the need for
deterrence and adequacy of less drastic sanctions—also support entry of default
judgment against Probo." *Id.* As to the sufficiency of less drastic sanctions, Judge
Tinsley points to Probo's "continued propensity for ignoring [c]ourt orders" as
demonstrated by the record. In addition to "immediately disregard[ing]" the court's
December 2022 Order, Probo "misled [Philips] and the [c]ourt regarding its progress,
all while continuing to seek to delay the progress of this action." *Id.* at 28–29. Further,
Judge Tinsley notes that Probo's document "dump"—despite its self-congratulations
for "its to-the-letter compliance with [the court's] July 2023 Order"—does not absolve
it of its past misconduct or render a default judgment sanction premature, as Probo
argues. *Id.* at 29.

Judge Tinsley finds that the need for deterrence, likewise, "strongly favors
severe sanctions," stating that "[t]here could not be a stronger case requiring default
judgment to serve the purpose of deterring the type of egregious litigation tactics in
which Probo has engaged." *Id.* at 30–31.

> Though harsh, the sanction of default judgment is warranted under the
> circumstances because "not only does the noncomplying party jeopardize
> his or her adversary's case by such indifference, but to ignore such bold
> challenges to the district court's power would encourage other litigants
> to flirt with similar misconduct." *Richards*, 872 F.2d at 92 . . . Indeed,
> "default judgment against the defendants now is . . . an unmistakable

message to them and others that *the judicial system will not tolerate repeated misconduct never wholly remedied in the future*. To find otherwise would be to send the opposite message that *the court may be pushed, ignored and defied* to the outermost limits so long as the noncomplying party has even an inadequate fallback act ready in the wings should the final curtain be falling." *Id.* (emphasis added). So too here – anything short of default judgment will allow Probo (and other litigants) to take a gamble and ignore a [c]ourt Order (critically governing the scope of the litigation) to the extreme prejudice of the opposing party (who cannot be wholly remedied, as here), knowing that at most, some lesser sanction may be implemented.

*Id.* at 31–32. As such, Judge Tinsley finds all four *Wilson* factors weigh in favor of

this court entering a judgment of default against Probo finding Probo liable for each

of the six counts alleged in Philips' Amended Complaint and order that this case

proceed to trial only as to the issue of damages. *Id.* at 32.

Finally, Judge Tinsley finds that the actions of the Ice Miller Attorneys—Adam

Arceneaux and Eric McKeown—merit personal sanctions under Rule 11(b) of the

Federal Rules of Civil Procedure for their misconduct in representing Probo during

discovery. *Id.* Specifically, Judge Tinsley points to counsel's vast overstatement

regarding "Probo's true progress toward completion of its document production" and

representations to Philips and the court regarding that progress "despite counsel's

knowledge that these representations lacked a reasonable basis in fact." *Id.* He

additionally states that Philips' "introduction of the former Ultrasound Online

employee's affidavit *and attached email communications*," which were not preserved

and produced in accordance with the December 2022 Order, "bear indicia of

concealment." *Id.* (emphasis in original). As such, Judge Tinsley finds that "holding

[the Ice Miller Attorneys] financially responsible for the reasonable fees and costs

incurred by [Philips] in prosecuting its motions to compel and for sanctions . . . will adequately address their patent dereliction of duty as licensed attorneys and officers of the [c]ourt." *Id.* at 33 (citations omitted). He, therefore, recommends that monetary sanctions be imposed upon the Ice Miller Attorneys personally for Philips' "reasonable fees and costs incurred in prosecuting its motions to compel and for sanctions." *Id.* at 34.

## II.   Standard of Review

A district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). In doing so, the court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The court need not, however, review the factual or legal conclusions of the Magistrate Judge to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In reviewing those portions of the PF&R to which the petitioner has objected, this court will consider the fact that the petitioner is acting *pro se* and will accord his pleadings liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## III.   Discussion

Probo and the Ice Miller Attorneys each raise objections to Judge Tinsley's PF&R. I will discuss each in turn.

### A.    *Probo's Objections*

Probo's objections to the PF&R are found in both its filed Objections, [ECF No. 382], as well as in "summary format" in its Exhibit A—filed as an attachment[7] to its Motion for Leave to File Exhibit, [ECF No. 383], which was granted by the court, [ECF No. 389]. To the extent that its objections refer to the same finding of fact or recommendation, those objections will be discussed together.

#### i.    *Objection I: the* Wilson *Factors*

Probo first objects to Judge Tinsley's finding that the *Wilson* factors support the court sanctioning Probo by entering a default judgment holding them liable on all six counts. [ECF No. 382, at 5–19]. I will break down this objection and discuss each of the four factors separately for clarity.

#### a.    Bad Faith

First, Probo claims it "has acted in good faith" and that, as such, "the first *Wilson* factor is not met." [ECF No. 382, at 6]. I disagree. Under *Wilson*, courts must first consider "whether the noncomplying party acted in bad faith." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989).

#### 1.    Attorney Conduct

The overarching argument Probo makes in an attempt to eschew any findings of bad faith is to blame former counsel, namely the Ice Miller Attorneys, who

---

[7] In citing to this Exhibit, I will use ECF No. 390, since that is the ECF number given to Exhibit A.

I must also warn Probo that should it appear before this court in the future, this type of "summary" objection list, wherein Probo merely highlighted portions of the PF&R to which it disagrees and used corresponding endnotes—thereby forcing the court to continuously search through the PF&R for the applicable language—will not be tolerated.

withdrew as counsel in this matter on October 4, 2023. For instance, Probo claims that it never withheld any documents, unlike the defendants in *Mey v. Phillips*, 71 F.4th 203 (4th Cir. 2023), because it "made its document universe available to its outside counsel from day one." [ECF No. 382, at 6]. Probo argues that counsel's choices regarding the review and production of that document universe "is not a basis to attribute any bad faith to Probo." *Id.; see also id.* at 7 (claiming that "any misapprehension of or *noncompliance* with [the December 2022] Order . . . was *in the sole domain of Probo's former counsel* (not Probo the party)") (emphasis added). It cites *Lolatchy* for the proposition that when attorneys engage in dilatory actions, the court should not attribute blame to the represented party. *Id.* at 10 (citing *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 952–53 (4th Cir. 1987)). But that case is distinguishable from the instant case. In *Lolatchy*, there had been "no prejudice to the plaintiff" and the "dilatory action" of the attorney "was not drawn out[ ] and continued at most for a time span of only a few months." *Lolatchy*, 816 F.2d at 953.

Here, there is prejudice to Philips[8]. And most importantly, the discovery misconduct in this case did not merely span "only a few months" but for over 500 days, or a year and a half. Initial discovery requests were served in January 2022, but Probo did not complete its production of documents until August 2023. Within that time period, Philips moved to compel and for sanctions twice, and the court issued two orders requiring Probo to comply with its discovery obligations. Despite ample evidence of misconduct, which extended far beyond a few months, Probo did

---

[8] *See supra* Section A(i)(b).

not hire new counsel until the end of July 2023, and then only after the court threatened Probo with an entry of default judgment.

Ultimately, Probo's argument that it should not be held personally liable based on the conduct of its attorneys is unavailing. It is true that "courts are reluctant to punish a client for the behavior of his lawyer." *Dove v. CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978). However, in "our system of representative litigation, . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (affirming a court's sua sponte dismissal of a party's claims because the party's attorney failed to attend a pretrial conference and committed other dilatory tactics throughout six years of litigation). In accordance with both Supreme Court and Fourth Circuit precedent, I decline to distinguish between the conduct of attorneys and their clients. *See Gayle v. United Parcel Service, Inc.*, 401 F.3d 222, 226 (4th Cir. 2005) (rejecting the argument that her attorney's negligence justified equitable tolling of her claim); *see also In re Walters*, 868 F.2d 665, 668–69 (4th Cir. 1989) ("[O]ne cannot voluntarily choose an attorney and then avoid the consequences of the attorney's acts or omissions."). The Fourth Circuit again recently reiterated this principle in *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 (4th Cir. 2010) (citing *Link*, 370 U.S. at 633–34).

This same logic applies here. As Probo voluntarily chose the attorneys to represent it in this action, it "cannot now avoid the consequences of the acts or omissions of this freely selected agent." Link, 370 U.S. at 633–34.

> If attorneys can neglect their clients' business with "no ill effects" to clients, "complete chaos in judicial proceedings will surely result." *Barber v. Turberville*, 218 F.2d 34, 38 (D.C. Cir. 1954) (Prettyman, J., dissenting). After all, it is the attorney with whom courts and opposing litigants must deal in the conduct of a lawsuit. Attorneys may understandably be reluctant to blame clients for delay, even when there may be grounds to do so. The district courts should not be relegated to citing attorneys for contempt, nor should they constantly have to unravel attorney-client relationships for respective shares of fault.

*Lolatchy*, 816 F.2d at 955–56 (Wilkinson, J., dissenting) (emphasis in original). I agree, and I find that Probo cannot escape liability for its discovery misconduct by simply blaming its prior counsel.

### 2.    January 18, 2023, Production Deadline

I also find Probo's claim that the January 18, 2023, deadline either did not apply to supplemental production or was otherwise unclear to prior counsel unavailing. [ECF No. 390, at 36 n.iv, vi-vii, xi, xiii, xv (citing [ECF No. 369, at 12])]; *see also* [ECF No. 382, at 8 (arguing that "any fault for such misunderstanding lies with Probo's former counsel")]. Probo contends that "[t]he parties reasonably and in good faith believed the January 18, 2023, deadline was for written supplemental responses, not Probo's production of documents." *Id.*; *see also* [ECF No. 382, at 7 (arguing that "Probo's prior counsel reasonably believed the December Order did not require Probo to complete document production by January 18, 2023")]. In making this argument, Probo refers to "supplemental response" as "a term of art for the formal document describing instant or forthcoming document productions." [ECF No. 382, at 7–8]. However, both the record and this court's local rules discount this claim.

56

First, in the parties' Joint Motion to Modify Scheduling Order, [ECF No. 132], filed on February 1, 2023, the parties claim that the December 2022 Order "required Probo to supplement its written discovery responses and document production." *Id.* at 3. January 18, 2023, was the only deadline given in the Order, which stated, in pertinent part, "[n]o later than thirty (30) days from the date of entry of this Order, which is January 18, 2023, Probo **SHALL** serve supplemental responses to Philips's discovery requests." [ECF No. 130, at 10]. The Order provided no separate deadline for production because that was also required to be completed by January 18, 2023. Even Arceneaux conceded this point during the July 2023 hearing on Philips' Motion to Compel Compliance with Discovery Order and for Sanctions. Arceneaux described the December 2022 Order as "very clear." [ECF No. 154, at 33]. And after Judge Tinsley stated that "the [c]ourt's deadline was January the 18th, 2023," pursuant to the December 2022 Order, Arceneaux concurred but said that the parties "agreed that that was unrealistic" due to the volume of documents involved. *Id.* at 37. It is troublesome, then, that Probo now alleges that there was any confusion on the production deadline.

But even had Probo truly misunderstood the December 2022 Order and believed that it didn't impose a specific deadline for the supplemental production, this court's Local Rules provide their own deadline. Local Rule 34.1(c) provides that "[w]hen it is ordered that document requests to which objections were made must be answered, the answers shall be served *within 14 days of the order*, unless the court directs or the parties stipulate otherwise." (emphasis added). Under this rule, if Judge

Tinsley's January 18, 2023, deadline did not apply to production, then production would actually have been due within fourteen (14) days of the December 2022 Order. And even if the parties' agreement on January 6, 2023, for a two-week extension to respond had applied to the production—which it did not—that agreement would have been made after the production deadline as stated in Local Rule 34.1(c).

Finally, it is incumbent upon me to point out the irony of Probo's argument that the term "supplemental response" as used in the December 2022 Order only required it to "serve supplemental responses" by January 18, 2023, because even if that were the case, Probo still did not comply with the Order. Probo cites Rule 34(b)(2) of the Federal Rules of Civil Procedure as requiring that a response "must either state that inspection . . . will be permitted . . . or state  . . . the grounds for objecting." Local Rule 34.1(a) further states that a response "shall be preceded by the request to which it responds." But Probo *did not* provide Philips with any written response to each of its production requests *either* indicating that it would permit the inspection of the responsive documents *or* stating any grounds for objection after the December 2022 Order. In fact, *Probo did not even know what documents were responsive* until after the July 2023 Order was entered. *See* [ECF No. 154, at 51 (Arceneaux stating that "the last [he] heard," there were "over 100,000 documents" left to review and produce and admitting that he did not know the "purchase order and invoice universe")].

### 3.   Lack of Gamesmanship

Additionally, Probo argues that its filing of the protective order motion and rejection of "Philips' baseless allegations" are not bad-faith litigation tactics. [ECF

No. 382, at 6]. It also rejects the court's assertion that it "improperly resisted discovery" because the December 2022 Order "vindicate[ed] Probo's position that Philips' discovery requests were overbroad." *Id.* at 7. But this argument, too, is flawed. Probo attempted to circumvent its discovery obligations from the very beginning, when it responded to Philips' requests with objections about the merits of Philips' claims.

"[A] party cannot refuse to engage in—and is not excused from being subjected to—discovery simply because the discovery is relevant to a claim on which the resisting party believes that he will or should prevail." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N. D. Tex. 2018). Other courts have held likewise. In *Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012), a magistrate judge granted a motion to compel discovery over a party's objections about the merits of the case, stating that even though the party may "hold[] a strong belief in the merits of its litigation positions, its strong belief—whether ultimately justified or not—provides no basis for avoiding its discovery obligations created by the Federal Rules of Civil Procedure." *Id.*

The same reasoning applies here. Despite Probo's apparent belief that Philips did not state a claim for relief as to its pattern and practice claim, that did not provide Probo with a valid basis for objection to withhold discoverable information. Moreover, Probo never even filed a motion to dismiss the claims, and at the time it objected to discovery, there were no pending motions regarding the merits of the litigation. And while "[l]imitation or postponement of discovery *may* be appropriate when a

defendant files a motion to dismiss for failure to state a claim on which relief can be granted[, t]he mere filing of the motion does not automatically stay discovery." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) (citing *SK Hand Tool Corp. v. Dresser Indus. Inc.*, 852 F.2d 936, 945 (7th Cir. 1988)) (emphasis added). But again, there were *no* pending dispositive motions at the time of Probo's initial response to Philips' first set of discovery requests, and objecting to discovery upon a supposed belief that Philips failed to state a claim was inappropriate.

Probo's tactics regarding those production requests to which it did substantively respond are also telling. Rather than responding to each request related to the KDMC machines with an individualized identification of responsive documents relating to that request, Probo inserted the following blanket language: "Without waiving the foregoing objections, Probo produces responsive documents related to the Two Ultrasound Machines at issue in this action bates numbered PROBO0000001-PROBO0000600." [ECF No. 91-4, at 4–12, 15–16, 19, 21, 29, 31–32, 39–40, 43, 48].

Federal Rule of Civil Procedure 34(b)(2)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them *to correspond to the categories in the request*." (emphasis added). If a party chooses to produce documents as they are kept in the usual course of business, then that party "bears the burden of demonstrating that the documents were produced in this manner." *CTL Engr. of W. Virginia, Inc. ms consultants, inc. v. Kokosing Constr. Co., Inc.*, No. 3:14-CV-90, 2015 WL 12751694, at *3 (N.D. W. Va.

Jan. 30, 2015), aff'd sub nom. CTL Engr. of W. Virginia, Inc. v. MS Consultants, Inc., No. 3:14-CV-90, 2015 WL 1468395 (N.D. W. Va. Mar. 30, 2015). Here, because there is no indication that Probo's documents were produced in the ordinary course of business, it is required by the rule to "organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).

Courts have found that a "go find it" approach to requests for production, like that used by Probo in its responses, is inadequate. *See Molina Const., Inc. v. Westchester Surplus Lines Ins. Co.*, No. 7:23-cv-00107, 2024 WL 620283, at *3 (S.D. Tex. Feb. 14, 2024) (finding plaintiff's response to each of Defendant's requests for production, which stated "Please refer to the attached documents" to be inadequate); *see also Davenport v. Stoller*, No. 8:20-CV-03827-TMC, 2021 WL 5904326, at *2 (D.S.C. Dec. 14, 2021) (requiring a party to go back and organize and label the responsive documents after his previous response stated that "he has boxes and boxes" that the party can come and review); *cf. Pinnacle Bank v. Tradesman Brewing Co.*, No. CV 2:20-837-RMG, 2020 WL 6305331, at *3 (D.S.C. Oct. 27, 2020) (finding sufficient organization when the party explained that its production was organized into subfolders corresponding to requests for production); *Excel Enters., LLC v. Winona PVD Coatings, LLC*, No. 3:16-CV-19-WCL-MGG, 2017 WL 655861 (N.D. Ind. Feb. 17, 2017) (finding compliance with the rules because a party converted its 30,000 documents to a searchable format as requested). In this regard, courts have ordered parties to "identify . . . which documents respond to [the] document requests" when

there has not been compliance with the Rule. *Walsh v. Kynd Hearts Home Healthcare, LLC*, No. 2:20CV630, 2022 WL 18108388, at *2 (E.D. Va. Sept. 1, 2022).

Probo clearly failed to take any steps to organize its responsive documents in a way that would allow Philips to easily ascertain to which request each document corresponded. This "dig it out yourself" approach to production is—at best—lazy litigating and—at worst—a blatant attempt to impose a burden on the opposing party. Either way, it cannot stand.

Finally, Probo contends that its actions after the July 2023 Order—i.e. the production of 661,101 pages of documents between July 21, 2023, and August 18, 2023, [ECF No. 247-1, at 5], in addition to serving "sweeping" discovery on Philips and moving to strike Philips' supplemental expert reports, [ECF No. 226, at 14–16]— do not constitute gamesmanship, bad faith, or "sandbagging," [ECF No. 390, at 37 n.xix (citing [ECF No. 369, at 15])]. Rather, it seemingly blames Philips for the "document 'dump,'" stating that "Probo advised Philips in advance that the materials Probo had gathered and would be producing in compliance with Philips' . . . requests were quite voluminous, and Philip's maintained its position that Probo should produce all such materials." [ECF No. 382, at 13]. And once again, it blames prior counsel for the additional discovery requests it served on Philips—while Philips was simultaneously trying to review and digest over 600,000 pages of production— claiming that "upon determining that prior counsel had pursued discovery insufficiently, serving additional demands was consistent with substitute counsel's professional obligations to its client." *Id.* at 14.

Likewise, Probo argues that counsel's statements at the January 4, 2024, hearing that "there is no prejudice" to Philips and that "[i]t is a phantom," [ECF No. 154, at 70], are taken out of context and do not support a finding of "Probo's consistent pattern of blatant gamesmanship," [ECF No. 390, at 39 n.xl (quoting [ECF No. 369, at 26])]. Rather, it contends that "Probo's counsel was referencing the lack of *severe* prejudice required to meet the legal standard for the issuance of a default judgment." *Id.* But here, again, the record is clear. Probo has argued *repeatedly*—including in its Response in Opposition to Philips' Renewed Motion for Sanctions—that Philips experience *no prejudice. See* [ECF No. 247, at 8–9, 10 (stating that "Philips has not been prejudiced by Probo's delayed production of documents or otherwise" and that "Philips' claims of prejudice ring hollow")]; *see also* [ECF No. 149, at 11 ("[A]t present, there is no prejudice to Philips.")]. Because it was entirely plausible that Probo's counsel *meant* what he *said*—that "there [was] no prejudice"—I cannot find that Judge Tinsley's finding in that regard was erroneous.

### 4.   Substantial Action

Probo next argues that Judge Tinsley's assertion that it "took no substantial action to comply with the [c]ourt's 2022 Order," [ECF No. 369, at 12], is incorrect, claiming that it took "immediate steps to comply with the December 2022 Order and made rolling productions of documents, starting with those identified as highest priority by Philips." [ECF No. 390, at 36 n.v]; *see also* [ECF Nos. 382, at 9; 390, at 37 n.xvii (characterizing its actions after the December 2022 Order as "diligent efforts")]. However, it is an indisputable fact that, when Judge Tinsley entered his July 2023

Order, Probo still had over 100,000 documents to review—meaning that, contrary to its representation to the court that it was being "diligent" with its production efforts, the record clearly shows that Probo was not significantly closer to completion of its 100,000-document review and production in early July 2023 than it had been in December 2022 when Judge Tinsley first ordered Probo to complete its production. *See, e.g.,* [ECF No. 154]. And despite Probo's arguments to the contrary, "immediate" steps to confer and the production of a single, and *arguably incomplete*, Excel spreadsheet of data—that was provided over a week after Probo's initial estimate— is not *substantial* action. *See* [ECF No. 146-4, at 2]. Turning over *less than 10% of its total production volume* over the course of *seven months* and *only* after repeated cajoling from opposing counsel is not *substantial* action. *See* [ECF No. 226, at 9]. Repeatedly responding to progress inquiries with misrepresentations and fictitious production dates is not *substantial* action. *See, e.g.,* [ECF Nos. 146-1, at 2 (giving Philips a 90-day completion estimate for production); 146-5, at 2–3 (stating Philips would have responsive documents "next week" but providing them thirteen days later); 146-7, at 4 (stating on May 10, 2023, that it would produce documents "within the next few days" but taking twenty days to do so)]. As such, I concur with Judge Tinsley's finding that Probo took no substantial action to comply with the December 2022 Order prior to the filing of Philips' sanctions motion.

### 5. Miscalculated Ninety-Day Estimate

Probo also takes issue with Judge Tinsley's statement that "Probo did not have a good-faith factual basis" for making its 90-day completion estimate to Philips in

early February 2023, or otherwise made the misrepresentation "knowingly or in reckless disregard of the truth." [ECF No. 390 at 37 n.viii, x, xviii, xxiii, xxix (citing [ECF No. 369, at 13, 17])]; *see also* [ECF No. 382, at 11–12]. Rather, it contends that the estimate was "a reasonable calculation provided in good faith," [ECF No. 390, at 37 n.viii], and "has *no relevance* to Probo's good faith," [ECF 382, at 12] (emphasis in original). But the record contradicts this assertion.

By early February 2023, when the 90-day completion representation was made, discovery had been pending for over a year. Philips served its first set of discovery requests—which encompassed over 90% of its total requests—in January 2022. However, Probo's counsel admits that when the completion estimate was made in February 2023, "[they] had no idea of the magnitude of what [they] were getting into." [ECF No. 154, at 44]. Despite Probo's assertion that "things were essentially on hold" between the filing of its Motion for Protective Order and the December 2022 Order, nothing prevented Probo from continuing to gather and review potentially responsive documents, especially in light of the magnitude of the potential production volume it was facing. [ECF No. 354, at 72]. Had it done so, rather than relying on its improper merits objection as a Hail Mary attempt to avoid producing documents, discovery could have been completed in compliance with the December 2022 Order, the case could have continued as planned, and the parties would not be in the difficult position in which they now find themselves.

Probo's failure to even attempt to ascertain the total volume of potential documents responsive to Philips' request makes its misrepresentation more than a

simple error in calculation. It demonstrates Probo's lack of care in meaningfully engaging in the discovery process before July 2023. As such, I find Probo's argument in this regard to be unconvincing.

### 6.   Full Compliance with July 2023 Order

Next, Probo argues that its full compliance after the July 2023 Order precludes the court from sanctioning it through default judgment. [ECF No. 382, at 12]; *see* [ECF No. 390, at 41 n.lvii]. It points to actions taken by Probo "immediately upon receiving the July Order," including retaining new counsel and "producing extensive electronic materials . . . in a highly compressed time frame" as proof of its compliance. [ECF No. 382, at 13]. I do not disagree that Probo complied fully with the court's July 2023 Order. However, I also do not believe that this forecloses the court's ability to sanction Probo as recommended by Judge Tinsley.

When considered as a whole, Probo's actions throughout the discovery process are a clear example of the bad faith and gamesmanship that courts and the Federal Rules of Civil Procedure seek to styme. I cannot, therefore, agree with Probo that its actions were taken in good faith, and Probo's objection to Judge Tinsley's finding of bad faith on Probo's part is **OVERRULED**.

### b.   Severe Prejudice

Probo next argues that Philips' has not been severely prejudiced[9] by Probo's actions, and therefore, this *Wilson* factor has not been met. [ECF No. 382, at 14]. As

---

[9] In this Court's July 2023 Order, it found that Philips had been prejudiced by Probo's conduct leading up to the date of the July 2023 hearing. As such, I will not delve into that conduct but will focus my

proof of this alleged lack of prejudice, Probo argues that the fact that Philips filed a motion for summary judgment indicates that Philips "has been able to fully develop its case." *Id.* However, Probo overstates Philips' position. Philips' motion sought *partial* summary judgment on only *two* of its six claims. [ECF No. 248]. Further, the applicable scheduling order set a deadline for the filing of dispositive motions, and had Philips not at least tried to move for summary judgment when it did—on the last day dispositive motions could be filed—it would have forfeited its right to do so. Probo seems to think that Philips' compliance with the court's deadlines bolsters Probo's position. It does not.

Probo also claims that "having to review a large volume of documents in a compressed time frame" does not constitute "severe prejudice." [ECF No. 382, at 15]. It argues that as an "experienced plaintiff," Philips has the resources to process the inordinate number of documents within the allotted time without being severely prejudiced. *Id.*; *see also* [ECF No. 354, at 100 ("This is big boy and girl law. . . . This is a major case with major law firms. They could get through the documents in sufficient time to take depositions. They have the resources.")]. I find it odd, however, that Probo wants the court to—on one hand—congratulate it for its heroic efforts of "work[ing] tirelessly" to produce hundreds of thousands of overdue documents, *id.* at 13, while—on the other hand—diminishing Philips' efforts to review and digest all of the responsive material, in addition to answering additional discovery requests and supplementing their expert reports within a matter of weeks. As Philips' counsel

---

inquiry on Probo's conduct *after* the July 2023 Order was entered.

stated, "trying to do what you would normally do in five months in discovery in six weeks puts tremendous . . . burden" on a party. [ECF No. 354, at 24–25].

Finally, despite Probo's attorney casting Philips' hindered discovery follow up as a simple case of "coulda, shoulda, woulda, maybe it would have been nice," *id.* at 68, the record is clear that Probo's actions affected Philips' ability to adequately prepare for trial. *See id.* at 44 (stating that had Probo completed production as initially ordered, Philips "would have had three months to digest it, do any follow up, do depositions, and then do [its] expert reports, and then engage in the additional expert discovery, [and conduct] any additional fact discovery"); *see also* [ECF No. 132, at 6–7 ("Probo's forthcoming discovery responses and document production will unquestionably contain information relevant to Philip[s]' expert reports. . . . Indeed, even if Probo completes its outstanding . . . document production . . . by May 2, 2023, the parties would need time to complete any follow up discovery, conduct expert discovery, and schedule and complete depositions.")]. At the January 2024 hearing, Philips named several individuals that it would likely have deposed had it been allowed sufficient time to process and follow up on Probo's discovery responses. *See* [ECF No. 354, at 36–38]. Ultimately, because of Probo's actions, Philips will "necessarily go to trial on an incomplete record." *Id.* at 44.

Due to Probo's actions throughout this case, Philips has suffered severe prejudice, as found by Judge Tinsley in both the July 2023 Order and the PF&R. I, therefore, agree that the second *Wilson* factor has been met, and accordingly, Probo's

objection to Judge Tinsley's finding of severe prejudice against Philips is **OVERRULED**.

c. <u>Deterrence</u>

Next, Probo argues that "[i]f the [c]ourt were to adopt the Default Recommendation, despite Probo's compliance with the July 2023 Order, future litigants will have every reason to ignore, not comply with, court orders." [ECF No. 382, at 17]. It states that "[t]o issue a default based on pre-July Order conduct by Probo's prior counsel—especially given the vast time and resources Probo expended thereafter, both to comply with the July Order and to advance the case substantively—would be an upside-down result" because it "would send a message that attempts to remedy alleged lack of compliance will result in the most severe sanction anyway." *Id.* I disagree.

Again, I think Probo's focus is on the wrong conduct. The sanction recommended by Judge Tinsley is not the result of Probo's compliance with the July 2023 Order. Rather, the recommendation stems from Probo's pre-July 2023 conduct, which was the subject of the July 2023 Order in which Judge Tinsley ruled that sanctions were appropriate. *See* [ECF No. 153]. Although Probo's compliance with the July 2023 Order did add to Philips' prejudice, it did so *because* of the egregiousness of Probo's prior conduct. Had Probo not failed or refused to provide 92% of its production prior to the July 2023 Order, Philips would not have had the same issues in digesting that production and would have been able to more fully prepare its experts for trial. Probo's misconduct and the resulting prejudice to Philips were

69

not absolved simply because Probo eventually complied—after two separate court orders—and its argument that belated compliance should preclude the recommended sanction is inapposite.

Probo's conduct, as already held by the July 2023 Order, was egregious and warrants sanctions to deter similar actions by other litigants. "Parties in civil proceedings must be afforded the opportunity to uncover evidence which could affect the outcome of the case." *United States v. Wright*, No. 97-2031, 1999 U.S. App. LEXIS 16769, at *12–13 (4th Cir. Jul. 19, 1999). "[S]talling and ignoring the direct orders of the court with impunity" is "misconduct" that "must obviously be deterred." *Richards*, 872 F.2d at 93. "To find otherwise would be to send the . . . message that the court may be pushed, ignored and defied to the outermost limits so long as the noncomplying party has even an inadequate fallback act ready in the wings should the final curtain be falling." *Id.* at 94; *see also Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (holding that default judgment sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

Here, the need for severe sanctions goes beyond Probo's misconduct toward Philips. Probo misrepresented *to the court* that it was being diligent with its production efforts, and it *knowingly disobeyed* Judge Tinsley's December 2022 Order, thereby requiring the court to issue a second Order. Only when it was expressly facing default judgment did Probo finally complete its review. By doing anything short of

70

entering default against Probo for its egregious violations, the court would be sending a message to the public that parties can pick-and-choose which court orders they want to follow. Likewise, monetary sanctions would send the message that parties can simply choose not to cooperate in discovery and withhold unfavorable evidence—essentially a gamble that such monetary sanctions would cost less than an adverse judgment, such as is the case here.

For these reasons, Probo's objection to Judge Tinsley's finding that the need for deterrence favors the recommended sanction is **OVERRULED**.

### d.  Less Severe Sanctions

Finally, Probo argues that less drastic sanctions would suffice in this case and suggests that, like in *Mey*, the court should first impose a lesser sanction. [ECF No. 382, at 18]. I disagree. In that case, the lesser sanction was to strike the non-complying party's defenses. *Mey*, 71 F.4th at 214. But as the Fourth Circuit noted in *Mey*, "the later imposition of default judgment [did] not appear meaningfully different from the initial sanction striking defenses." *Id.* at 222. Further, this court has already rejected one of Probo's proposed sanctions—allowing Philips to "take additional fact and/or expert discovery . . . and to supplement its summary judgment briefing," because it would not cure the prejudice to Philips. [ECF No. 382, at 19 n.22]. Rather, it would give Philips even less time to prepare for trial, which this court has already stated will not be postponed again. And the other two suggestions Probo makes—denying Probo's pending motions to compel discovery and exclude or strike Philips' expert report or requiring Probo or its former counsel to "make a meaningful payment

into an access to justice or pro bono program"—would do nothing to ameliorate the prejudice to Philips or to the court. *Id.*

First, there is no guarantee that Probo's Motion to Compel—filed the day before the discovery deadline—would be granted. [ECF No. 235]. In it, Probo seeks to compel Philips to produce sprawling documentation and communications related to the ultrasound machines at issue in this case. *Id.* The request for that information was not served on Philips until August 2023, when Probo knew that Philips was in the midst of reviewing hundreds of thousands of pages of documents produced by Probo. [ECF No. 249, at 11]. And, as Philips argues in its Response, "[c]ourts routinely deny motions filed at or near the end of the discovery period, following unreasonable delays in pursuing discovery." *Id.* (citing *Gulfstream, Inc. v. Palm Yacht Sales*, No. 94-2155, No. 94-2381, No. 95-1144, 1999 U.S. App. LEXIS 7208, at *9 (4th Cir. Apr. 12, 1999) (affirming denial of motion to compel filed less than one week before discovery deadline when "each side had ample time to conduct discovery" and the case "had been pending for approximately two years"); *Dotson v. Dolgencorp, LLC*, No. 3:15-cv-13754, 2016 U.S. Dist. LEXIS 97814 (S.D. W. Va. July 27, 2016) (denying motion to compel filed eight days before discovery deadline, as the motion could not be fully briefed before deadline)) (additional citations omitted). Because Probo's delayed discovery requests and motion to compel could reasonably have resulted in an adverse ruling for Probo, the court's denial of Probo's Motion to Compel as a sanction will not suffice.

Likewise, sanctioning Probo by denying its Motion to Exclude Philips' supplemental expert reports, [ECF No. 227-1], would be insufficient. The court specifically allowed Philips to supplement its expert reports based on Probo's discovery conduct, because at the time that Philips' initial expert reports were due, Probo had produced only a fraction of its total volume of documents responsive to Philips' January 2022 discovery requests. It is unsurprising, then, that the supplemental reports contain "new opinions." *Id.* at 4. Further, Probo's arguments about its experts not having "any meaningful opportunity to analyze and respond" ring hollow in light of Probo's delays in this case. *Id.* As such, denial of its motion would not be a sufficient sanction here.

Monetary sanctions would also be insufficient here, especially in light of the amount of potential damages in this case. Allowing Probo to merely "make a meaningful payment into an access to justice or pro bono program" for its dilatory actions in this case would send a message to Probo and other parties seeking to avoid their discovery obligations: that they can try to play the judicial system for a fee, especially in cases like this where the monetary sanction would pale in comparison to potential damages. [ECF No. 382, at 19 n.22]. While payments into such programs are certainly beneficial for the judicial system, they are not a sufficient sanction here.

Further, the court has considered other less drastic sanctions but ultimately finds that the entry of default against Probo is the only sanction that is appropriate here. As Judge Tinsley states in the PF&R, "the record demonstrates why less drastic sanctions would be insufficient—Probo's continued propensity for ignoring court

orders." [ECF No. 369, at 28]. Even now, Probo argues that the December 2022 Order did not place a deadline on its production efforts, despite being explicitly told by the court on more than one occasion that it did. *See* [ECF Nos. 154, at 37 (the court telling Probo's counsel that "the Court's deadline was January the 18th, 2023"); 153, at 2 ("In the [c]ourt's December 19, 2022[,] Order, the undersigned . . . ordered Probo to serve its supplemental responses no later than January 18, 2023. Probo did not comply with the Order.")]. Because less drastic sanction "would have no effect on Probo, would not cure the severe prejudice Philips has suffered, and would encourage other litigants to undertake similar misconduct," I cannot find that less drastic sanctions would suffice in this case. [ECF No. 388, at 20].

Additionally, I find Probo's claim that "sanctions were not even on the table prior to the July Order and its precursor briefing" to be indicative of its lack of deference to the court. *Id.* It is well established that district courts have "broad discretion . . . to supervise discovery, including the imposition of sanctions for discovery abuses, as part of their case-management authority." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–79 (4th Cir. 2005)). "If a party fails to obey an order to provide or permit discovery . . . or fails to serve a response after being served with interrogatories or a request for production, the district court may order sanctions, including 'rendering a default judgment against the disobedient party.'" *Mey*, 71 F.4th at 218 (quoting Fed. R. Civ. P. 37(b)(2)(A)(vi)). Without being able to enter a directed verdict, the court would lose much of its enforcement authority,

fundamentally imperiling the judicial process. And while the Fourth Circuit has "'emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction,' an explicit warning it not always necessary." *Id.*; *see also Lolatchy*, 816 F.2d at 956 (Wilkinson, J., dissenting) (noting that Federal Rule of Civil Procedure 37 already puts a party on notice of the possibility of default by its terms); *Young Again Products, Inc. v. Acord*, 459 F. App'x 294, 304 (4th Cir. 2011) (affirming the district court's imposition of default judgment despite its failure to explicitly warn of such sanction because the defendant had "constructive notice" of the possibility of default from the opposing party's motions for sanctions and the district court's expressed displeasure with the lack of compliance).

Despite knowing that Rule 37 would permit the court to sanction it for noncompliance with discovery and court orders, Probo repeatedly flouted its discovery obligations for over a year-and-a-half. Further, although the July 2023 Order specifically notified Probo that a default judgment would be entered if Probo failed to comply, the fact remains that the July 2023 Order also found that sanctions were warranted for Probo's *past* conduct. Nowhere in the Order did the court state that it would *only* enter default if Probo failed to comply with the July 2023 Order, as Probo seems to construe it.

For these reasons, Probo's objection to Judge Tinsley's finding that less drastic sanctions would be insufficient is **OVERRULED**.

ii.    *Objection II: Appearance of Current Counsel*

Probo next objects to Judge Tinsley's statement that the entry of appearance of Probo's current counsel occurred on September 21, 2023. [ECF No. 390, at 36 n.ii (citing [ECF No. 369, at 6 n.3]). Rather, it states that "Probo's current counsel first appeared in this matter on July 26–27, 2023." *Id.* After reviewing the record, it is clear that attorneys Shannon Kirk, Mark Cianci, and Gregg Wiener, of Ropes & Gray LLP, each filed a Statement of Visiting Attorney between July 26, 2023, and July 27, 2023. [ECF Nos. 155–57]. Attorneys Emily M. Rector, of Steptoe & Johnson PLLC, and Wesley A. Shumway, of Spilman Thomas & Battle PLLC, each filed a Notice of Appearance on September 19, 2023. [ECF Nos. 211, 212]. On September 21, 2023, five more Ropes & Gray attorneys—Christopher Thomas Brown, Rachael Bacha, Shong Yin, Jane E. McGraw, and Evan Gourvitz—each filed a Statement of Visiting Attorney. [ECF Nos. 216–20]. On September 27, 2023, attorney Gerald M. Titus III, of Spilman Thomas & Battle PLLC, filed a Notice of Appearance. [ECF No. 231].

However, it is important to note that Judge Tinsley's PF&R does not state that the Ropes & Gray attorneys *first* appeared on Probo's behalf in September 2023, but rather that the Ice Miller Attorneys withdrew "following entry of appearance of Probo's current counsel on September 21, 2023." [ECF No. 369, at 6 n.3]. The five Ropes & Gray attorneys who did file a Statement of Visiting Attorney are still current counsel for Probo, and the statement at issue was meant merely to show the withdrawal date of the Ice Miller Attorneys. However, for clarity, I will note for the

record that new counsel for Probo *first* appeared in this case on July 26, 2023, and will otherwise **OVERRULE** the objection.

### iii.    Objection III: Limited-role Argument

Probo next objects to Judge Tinsley's statement that "Probo essentially offered 'nothing but its counsel's say-so' in support of its 'limited-role' argument" in its Motion for a Protective Order. [ECF No. 390, at 36 n.iii (citing [ECF No. 369, at 10]). To support its objection, Probo states that its Motion for a Protective Order, [ECF No. 85], "enclosed multiple supporting documents." *Id.* However, after a careful review of the exhibits to the Motion, it is clear that Judge Tinsley is correct. The only mention of Probo's "limited role" in the KDMC machine transaction is in Exhibit B, a letter to Philips' counsel from Arceneaux. [ECF No. 85-2]. No other supporting documentation specifically mentioned Probo's limited role in the transaction. As such, this objection is **OVERRULED**.

### iv.    Objection IV: Digitization of Physical Documents

Probo next objects to Judge Tinsley's statement that it still needed to "digitize boxes of physical documents" when it provided its 90-days completion estimate to Philips in February 2023. [ECF No. 390, at 37 n.ix, x, xxv (citing [ECF No. 369, at 13])]. Rather, it contends that it "never had to digitize boxes of physical documents." *Id.* at 37 n.ix. But ultimately, whether Probo had to digitize documents or not is inconsequential in light of the larger problem: that Probo had no idea of the number of documents that still needed to be reviewed and processed for responsiveness at the time it made its 90-day completion estimate. As such, this objection is **OVERRULED**.

### v.   Objection V: Estimated Completion Date

In regard to the 90-day estimate provided to Philips in February 2023—discussed above—Probo also specifically objects to Judge Tinsley's statement that the end of that 90-day period would fall at "the end of April 2023," arguing instead that the correct date was May 2, 2023. [ECF No. 390, at 37 n.xii (citing [ECF No. 369, at 13])]. However, Judge Tinsley got this estimated completion timeline from the record, [ECF No. 146-5, at 5]. In any event, the exact date is inconsequential since Probo did not come close to meeting the deadline, whether it was in April or May 2023. As such, this objection is **OVERRULED**.

### vi.   Objection VI: Framing of Joint Motion

Probo next objects to Judge Tinsley's statement that "[t]he *Joint Motion* subtly framed the . . . December 2022 Order in a manner that diluted, downplayed, and obscured Probo's noncompliance" and the assertion that the statements in the Joint Motion, too, were misrepresentations by Probo. [ECF No. 390, at 37 n.xiv, xvi (citing [ECF No. 369, at 14])]. Probo contends that "[b]oth parties at the time believed there was no 'noncompliance' with the December 2022 Order" and further argues that "a statement made in a *joint* motion should not support a default judgment in Philips' favor." *Id.* at 37 n.xiv.

Despite these arguments, I am inclined to agree with Judge Tinsley's characterization of the statements made in the Joint Motion, [ECF No. 132], based on the record. This objection is **OVERRULED**.

vii.    *Objection VII: "Shocking" Response*

Probo next objects to Judge Tinsley's characterization of Probo's representation to Philips that it anticipated the production completion date would need to be pushed to August 31, 2023, as "shocking." [ECF No. 390, at 38 n.xx (citing [ECF No. 369, at 15])]. However, because I am in no position to disagree with Judge Tinsley's perception of that information, this objection is **OVERRULED**.

viii.    *Objection VIII: Extent of Delinquency*

Probo next objects to Judge Tinsley's statement that "the *extent* of Probo's delinquency was laid bare" after the court denied the parties' joint motion to modify on July 6, 2023. [ECF No. 390, at 38 n.xxi (citing [ECF No. 369, at 15])]. Instead, Probo claims that both parties stated that there was "[n]o prior deadline" for Probo's production. But regardless of Probo's assertion, the record is clear that there *was* a deadline. The court set a deadline of January 18, 2023, regardless of whether the parties somehow misunderstood or, as Probo's counsel stated to the court, "agreed that that was unrealistic." [ECF No. 154, at 37].

Further, it was only after this court denied the parties' joint motion that Philips filed its motion to compel and for sanctions, outlining the extent of Probo's lack of production efforts and misrepresentations. [ECF No. 146]. Therefore, Judge Tinsley's statement that the extent of the delinquency was "laid bare" to the court at that time is not incorrect. This objection is **OVERRULED**.

### ix. Objection IX: Acknowledgment of Prejudice

Probo next objects to Judge Tinsley's statement that it "acknowledged its fault and the prejudice to Philips due to its failure to timely comply with the Discovery Order," [ECF No. 369, at 16], arguing instead that Probo did not concede any prejudice but merely recognized that it intended to "minimize . . . any *potential* prejudice to Philips that could be caused by the delay in completing its productions from its original estimate," [ECF No. 390, at 38 n.xxii (quoting [ECF No. 144, at 6])]. But stating that you intend to minimize a thing is an acknowledgment that the thing, indeed, exists. Regardless of whether Probo meant for its statement in its status conference motion to be a recognition of any prejudice, the fact remains that the court held in its July 2023 Order that Philips *was* prejudiced by Probo's actions. *See* [ECF No. 153]. Accordingly, this objection is **OVERRULED**.

### x. Objection X: Alarming Demonstration of Obfuscation

Probo next objects to Judge Tinsley's characterization of Probo's lack of effort in production prior to July 6, 2023, as "alarming[ ]" or as a "demonstrat[ion] [of] Probo's utter failure to comply with the Discovery Order." [ECF No. 390, at 38 n.xxvi (citing [ECF No. 369, at 17])]. It further argues that the record does not "evidence any attempt at obfuscation by Probo." *Id.*

First, as noted already, Judge Tinsley's perceptions, such as finding certain information to be "alarming[ ]," is not a factual finding to which I can sustain an objection. Further, I find that the record supports the remaining statements made by Judge Tinsley to which Probo now objects. Probo *had* failed to comply with the terms

of the December 2022 Order as of the beginning of July 2023. *See* [ECF No. 144, at 4–5 (stating that Probo had only produced approximately 16,000 documents as of July 10, 2023, despite estimating that the total number of documents to be produced was "in excess of 100,000 documents")]. Likewise, Probo's inability to provide a more concrete estimate at that time—a year and a half after initial discovery requests had been made—or at the hearing held almost two weeks later, supports Judge Tinsley's assertion that Probo deliberately attempted to "obfuscate the status of its production" prior to the court's denial of the parties' joint motion for a Fifth Amended Scheduling Order. [ECF No. 369, at 17]. Further solidifying this assertion is Probo's counsel admitting at the July 2023 hearing that he had only met with his team and outside e-discovery vendor the *night prior to the hearing* to formulate an estimated completion date. [ECF No. 154, at 35 (telling the court that counsel "conferred with [their] team" and discovery vendor "last night"—i.e., July 19, 2023)]. It is difficult, then, to characterize Probo's lack of insight into the volume and completion date of its production responses before July 2023 as anything other than willful ignorance.

For these reasons, this objection is **OVERRULED**.

     *xi.*    *Objection XI: Percentage of Production Completed by July 21, 2023*

Probo next objects to Judge Tinsley's statements that it had "completed only 8% of its total production" by July 21, 2023, and "turned over 92% of its entire production . . . after [Philips'] deadline to serve its expert disclosures," [ECF No. 369, at 25], claiming instead that "Probo had completed more than 18% of its total production" as of July 21, 2023, [ECF No. 390, at 39 n.xxxvi], and July 27, 2023, *id.*

at 39 n.xxxviii. The issue here comes down to semantics. If looking at the production statistics by total *documents* produced, Probo had, in fact, produced 18% of its total documents by July 21, 2023.[10] If, however, one focuses on the total number of *pages* produced, Probo's pre-July 21, 2023, productions comprised only 8% of the total pages produced to-date. Therefore, the percentages used in the PF&R are not incorrect. This objection is **OVERRULED**.

### xii.    *Objection XII: Number of Depositions Philips Conducted*

Probo next objects to Judge Tinsley's statement that Philips completed "two total" depositions in this case, [ECF No. 369, at 27], arguing instead that "Philips took five depositions," [ECF No. 390, at 39 n.xlii]. Philips does not contradict this assertion in its Response to Probo's Objections, [ECF No. 388], but the court has no means to verify the information. However, the total number of depositions Philips was able to take—whether it be two or five—is not dispositive. The fact remains that Philips should have had the right to follow up on discovery and complete additional depositions, especially in a case of this magnitude. Therefore, this objection is **OVERRULED**.

### xiii.    *Objection XIII: Normalcy of Compressed Timeline*

Probo next objects to Judge Tinsley's characterization of its counsel's statements at the January 4, 2024 hearing as "shrug[ing] off the intensely condensed timeline for [Philips'] review of Probo's eleventh-hour document dump as just a run-of-the-mill reality of civil litigation," as well as his statement that "Probo's own

---

[10] Based upon data Philips presented to the court in a PowerPoint at the January 2024 hearing.

evidence . . . belies the inaccuracy of this argument." [ECF No. 390, at 40 n.xliii, xliv, xlv (citing [ECF No. 369, at 27])]. Rather, Probo contends that its counsel merely asserted that "a condensed timeframe for document review should not be the basis for the most severe sanction of default judgment." *Id.* at 40 n.xliii. It further argues that "[t]he professional hours required of the producing party to scope and analyze a broad universe of materials collected for *review* and *potential production* is not an appropriate proxy for the hours required by the receiving party to analyze the narrower universe of materials ultimately produced." *Id.* at 40 n.xliv. While I agree that the review of potentially responsive documents likely takes longer than the analyzation of the end product, I agree with Judge Tinsley that Probo's argument regarding the normalcy of such a condensed timeframe is "frivolous and only serves to underscore the brazenness of its improper tactics." [ECF No. 369, at 27].

First, despite its arguments to the contrary, Probo's counsel did, in fact, attempt to paint Philips' exceedingly tight review deadline as "ordinary course for major litigation, which is what this is." [ECF No. 354, at 65]. Though he admits that Philips "had to spend more time in a shorter period than [it] otherwise would have liked," he discounts any prejudice Philips faced by having to consume such a large volume of documents in such a short time frame as "nothing unusual." *Id.*; *see also id.* at 100 (characterizing Probo's delay and the resulting condensed time frame as "the nature of litigation"); [ECF No. 247, at 9 (describing the 100 hours Philips spent digesting Probo's production in a single month as "modest in context").

Next, as already discussed, the condensed time frame that Philips faced, despite Probo's assertions otherwise, is not the primary basis for the sanction recommended in the PF&R. Rather, it was further proof of the severe prejudice that Philips faced as a result of Probo's continued delays throughout the course of this case. Probo's counsel stated when discussing violations of the court's December 2022 Order at the January 2024 hearing that he was "not going back to December" but was "focusing on July forward." [ECF No. 354, at 101]. And that is what Probo has continued to do in arguing against sanctions. But Probo's July actions cannot be looked at through blinders, as it seems to think.

When Probo's aggressive discovery tactics in July 2023 are taken in conjunction with all of its other actions throughout this case, it is clear that this case was far from "ordinary." Although I agree that Probo's July actions, alone, are insufficient to justify default, I also find that the PF&R makes no such assertions. As such, this objection is **OVERRULED**.

xiv.    *Objection XIV: Expenditure of Resources*

Probo, likewise, objects to Judge Tinsley's finding that "[Philips] was forced to incur substantial resources to digest the production." [ECF No. 390, at 40 n. xlvi, xlvii (citing [ECF No. 369, at 27])]. Instead, it argues that "[t]he expenses Philips incurred for document review in this case were presumably commensurate with the amount at stake, and would have been incurred regardless of the timing of Probo's productions." *Id.* at 40 n.xlvii. But this argument is fatally speculative and contrary to even the most minute amount of common sense.

84

It is the nature of businesses to allocate resources based on the demands placed upon that business. The same applies to law firms, but for the purposes of this analogy, I will use fast-food businesses as an example. When a fast-food establishment can anticipate a steady flow of customers, it schedules employees commensurate with the demands of that flow. For instance, if an establishment typically sells 500 hamburgers in a single day, it can determine how many employees it will need in order to keep the supply up with the demand. There is no mad scramble for additional help, because the establishment was able to plan ahead and allocate resources as needed. However, if a bus full of professional eaters arrives and the fast-food establishment suddenly needs to make an additional 1000 hamburgers in addition to its normal demand of 500 hamburgers, the establishment will likely need to call in additional help to meet that demand.

Despite Probo's assertions otherwise, that is what happened here. Although Philips has the resources to handle large amounts of document production, it also *generally* has the ability to spread the review of that documentation over a longer period of time by planning ahead and allocating those resources. But when it receives over 660,000 pages of documents in a single case with only weeks to review and digest that material, in addition to completing other tasks required by the case, its allocation of resources is rendered inadequate, and additional resources must be brought in. To argue otherwise is nonsensical, and I find Probo's "they were going to have to do it anyway" assertions unconvincing. As such, this objection is **OVERRULED**.

###### xv.   Objection XV: Concealment

Probo next objects to Judge Tinsley's comparison of this case with that of *Mey* in that "[Philips] introduction of the former Ultrasound Online employee's affidavit *and attached email communications* bear indicia of concealment." [ECF No. 390, at 40 n.lv (citing [ECF No. 369, at 32–33])]. It contends, instead, that it did not engage in concealment, because "[c]ontesting evidence is not concealment." *Id.* It also paints the affidavit referenced by the court as "inadmissible, unreliable, and contradicted by numerous exhibits and witnesses." *Id.* However, as this issue only involves the recommended sanctions against the Ice Miller Attorneys and is unrelated to the sanctions recommended to be imposed against Probo, the objection is **OVERRULED**.

###### xvi.   Objection XVI: Mootness of Pending Motions

Finally, Probo objects to the recommendation in the PF&R that "all pending motions regarding liability be **DENIED**, as moot," [ECF No. 369, at 34], because "many of the issues raised in the pending motions bear on both liability and damages, including the critical question of the *scope* of any liability." [ECF No. 390, at 41 n.lx] (emphasis in original). However, as Philips noted in its Response to Probo's Objections, "Probo does not get to litigate liability to determine the 'scope' of damages. To hold otherwise would eviscerate the sanction." [ECF No. 388, at 22]. Further, rather than sifting through dozens of motions to determine what aspects specifically apply to damages, it is well within the court's power and discretion to deem the pending motions as to liability moot and instruct the parties to file new motions relating solely to the issue of damages. As such, this objection is **OVERRULED**.

xvii.    *Other Objections*

Probo also makes several other objections to which no response is required by the court. For instance, in one objection, Probo states that the court had taken a "relevant statement out of context" because "Probo did not state that its document collection efforts were complete." [ECF No. 390, at 38 n.xxiv (citing [ECF No. 369, at 16–17])]. However, the highlighted text to which Probo's endnote corresponds—per its own "summary" format—does not assert that Probo indicated its efforts were complete. As such, the court cannot ascertain to what portion of the statement the objection is targeted.

Additionally, Probo makes several objections that are fatally non-specific, stating that it objects to "these numerous findings in their entirety" or a particular recommendation "for the reasons stated above and in its Objections." [ECF No. 390, at 39 n.xxxiv, xxxv, xxxvii, xxxix, xli, xlviii–liv, lvi, lvii–lx]. A response to these objections is not required. *See United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue *with sufficient specificity so as reasonably to alert the district court of the true ground for the objection*.") (emphasis added). "General objections do not meet the requirements set forth in 28 U.S.C. § 636(b)(1)(C) or Rule 72(b), and, therefore, constitute a waiver of *de novo* review." *Johnson v. Astorg Auto of Charleston Inc.*, No. 2:22-cv-00507, 2023 WL 6390022, at *3 (S.D. W. Va. Sept. 29, 2023) (citing *Howard's Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 475 (W.D.N.C. 1997)).

Finally, Probo objects to some portions of the PF&R that merely quote or reiterate the court's prior Orders in this case. For instance, in its endnote objection xxvii, Probo argues that the "nearly seventeen months" that passed between Philips' February 2022 discovery requests and the July 2023 Order is "not relevant." [ECF No. 390-1, at 38 n.xxvii (citing [ECF No. 369, at 17])]. However, aside from the word "[t]hat" at the beginning of the statement, the entire statement to which the objection is aimed is a direct quote from the July 2023 Order. *See* [ECF No. 153, at 5 ("Quite frankly, parties before this [c]ourt *routinely* compete far larger document reviews in much less time than the nearly seventeen months—more than five hundred days—that have passed since Philips served Probo with its Second Set of discovery requests on February 28, 2022.")]. Had Probo found issue with this statement, it should have objected to the July 2023 Order. However, it did not. As such, objections to statements comprised entirely of quotes or findings from prior orders will not be addressed. *See* [ECF No. 390, at 39 n.xxx, xxxi, xxxiii].

### B.   *Ice Miller Attorneys' Objections*

Next, the Ice Miller Attorneys specifically object to the imposition of Rule 11 sanctions against them personally on two grounds. First, they argue that the imposition of Rule 11 sanctions against them does not comply with the due process requirements of the Fifth Amendment. [ECF No. 386, at 2]. Second, they argue that their statements made to the court were supported by a basis in fact and are therefore not sanctionable under Rule 11. *Id.*

i.   *Objection I: Due Process*

It is well established that the imposition of sanctions must comport with the due process requirements of the Fifth Amendment. *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41–42 (4th Cir. 1995); *Kilborn v. Bakhir*, 70 Fed. App'x 692, 693–694 (4th Cir. 2003); *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995); *Hazeur v. Keller Indus.*, 983 F.2d 1061 (5th Cir. 1993) (unpublished). Rule 11 of the Federal Rules of Civil Procedure provides that the court must afford a party "notice and a reasonable opportunity to respond" before it imposes sanctions. *Stewart v. Thomas*, 50 Fed. App'x 184, 184 (4th Cir. 2002); Fed. R. Civ. P. 11(c). Furthermore, the Fourth Circuit has held that imposing a sanction against an attorney personally is essentially a criminal contempt sanction, which requires "notice and the opportunity to be heard." *Hathcock*, 53 F.3d at 42.

The Ice Miller Attorneys' objections to Judge Tinsley's recommendation regarding sanctions focuses first on whether they were afforded notice and a reasonable opportunity to respond as required by Rule 11(c) and the Fifth Amendment. Specifically, the Ice Miller Attorneys argue that they were not counsel of record when the January 2024 hearing occurred and were, therefore, not provided with any notice of the possibility they would be subject to sanctions. In affidavits submitted in support of their objections to the PF&R, both Arceneaux, [ECF No. 386-1 ¶¶ 32, 34–35], and McKeown, [ECF No. 386-2 ¶¶ 7–9], explain that no notice was provided to the Ice Miller Attorneys that they could be subject to sanctions, and they found out after the PF&R was entered. This position is supported by the record. When

Philips moved for sanctions against Probo, it did not move for sanctions against the Ice Miller Attorneys. Furthermore, the Ice Miller Attorneys withdrew as counsel of record on October 4, 2023. *See* [ECF Nos. 241, 242]. After this time, they did not receive notices of filings through the court's CM/ECF system and were unaware of the sanctions hearing before Judge Tinsley on January 4, 2024, *see* [ECF No. 295 (continuing the date for the hearing on Plaintiff's Renewed Motion for Sanctions to January 4, 2024)], or of the entry of the PF&R on January 19, 2024, [ECF No. 369].

Furthermore, I note that the imposition of sanctions against the Ice Miller Attorneys exceeds the sanctions which were sought by Philips in its motion for sanctions. The Third Circuit has found that a district court's adoption of a magistrate judge's recommendation of sanctions over objection violated the attorney's due process rights where the recommendation exceeded that which was requested in the motion for sanctions. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 191 (3d Cir. 2002). Here, Philips did not seek sanctions against the Ice Miller Attorneys, personally, in its motion for sanctions. Because the sanctions recommended by Judge Tinsley exceed those which were sought in the motion for sanctions, and because the Ice Miller Attorneys were not afforded notice and an opportunity to respond as required by due process, the imposition of sanctions against them is improper. Thus, I **SUSTAIN** the Ice Miller Attorneys' objection to the PF&R on the basis that they were deprived of due process. [ECF No. 386, at 10].

ii.  *Objection II: Legal and Factual Basis for Rule 11 Sanctions*

In the alternative, the Ice Miller Attorneys argue that even if they had been provided with adequate notice and a reasonable opportunity to respond as required by the Fifth Amendment and Rule 11(c), Rule 11 sanctions are not permitted in this situation. [ECF No. 386, at 12]. Because I find that the Ice Miller Attorneys were not given notice or a reasonable opportunity to respond, I do not reach the merits of this objection. Therefore, I **OVERRULE as moot** this objection.

## IV.  Conclusion

For the reasons stated above, the court **ADOPTS IN PART and REJECTS IN PART** the Magistrate Judge's PF&R, [ECF No. 369]. Specifically, the court **ADOPTS** the Magistrate Judge's findings of fact as to Probo's egregious conduct, **GRANTS** Philips' Motion to Compel, [ECF No. 146], and renewed Motion for Sanctions, [ECF No. 225], **ORDERS** the entry of a default judgment finding Probo liable as to each of Philips' legal claims, and **ORDERS** that this matter will proceed to trial solely on the issue of Philips' damages. The court further **ORDERS** that all pending motions regarding liability, [ECF Nos. 243, 244, 248, 251, 252, 256, 261, 262, 263, 271, 272, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 288, 289, 290, 291, 292, 293, 294, 297, 298, 299, 300, 301, 302, 322, 324, 325], are **DENIED as moot.** The court **REJECTS** that portion of the PF&R recommending the imposition of monetary sanctions against the Ice Miller Attorneys, personally.

91

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record, any unrepresented party, and the Magistrate Judge.

ENTER: February 20, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE